[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 4181
FACTS
Before the court is an application for a prejudgment remedy filed with the court on August 11, 1995 by the plaintiff, Walter Dahlgren (Dahlgren) against the defendant, FT Industries, Inc. (FT). Dahlgren seeks a order from the court securing the sum of $20,000.
According to the complaint attached to the application for a prejudgment remedy, the facts are as follows. On October 29, 1992, Capital Formation, Inc. (Capital) entered into agreement with FT. The agreement allegedly provided that Capital would be FT's exclusive broker in FT's attempt to secure a loan for its development project. The agreement further provided that FT would not obtain a loan from any lender found by Capital for a period of six months from October 29, 1992. At the expiration of this first agreement, Capital and FT entered into another agreement in April of 1993 whereby FT again agreed not to obtain a loan from any lender supplied by Capital for a period on one year from April 28, 1993. Both agreements provided that Capital was entitled to a fee of 5 per cent of the gross amount of any loan obtained by Capital for FT's benefit. (Plaintiff's exhibit 2).
On or about February 24, 1993, Capital secured a $60,000 loan from Carlon Construction of Stamford, LTD (Carlon) for FT. Thus, under the terms of the agreement, Capital was entitled to a fee of $3000. The complaint alleges that the defendant has paid only half of this amount. Furthermore, the complaint alleges that FT sought and obtained additional loans from Carlon on five separate occasions within the one year period outlined in the agreement. According to the plaintiff's calculations, the total amount of the loans allegedly obtained by FT in this period equals the sum of $273,240. Thus, the plaintiff claims that it is entitled to $13,662, or 5 per cent of the gross loan amount.
DISCUSSION
The hearing in probable cause for issuance of CT Page 4182 prejudgment remedy is not intended to be a trial on the merits. McCutcheon Burr, Inc. v. Berman, 218 Conn. 512,590 A.2d 438 (1991). In considering an application for a prejudgment remedy, the trial court determines whether or not there exists "probable cause to sustain the validity of the plaintiff's claim." General Statutes § 52-278d(a). The concern is "whether and what extent the plaintiff is entitled to have the property of the defendant held in the custody of law pending adjudication of the merits of that action." E.J. Hansen Elevator, Inc. v. Stoll, 167 Conn. 623,629-30, 356 A.2d 893 (1975). The plaintiff does not have to establish that he will prevail, only that there is probable cause to sustain the validity of the claim." NewEngland Land Co., Ltd. v. DeMarkey, 213 Conn. 612, 620,569 A.2d 1098 (1990). "Civil probable cause" such as will justify resort to a prejudgment remedy constitutes a bonafide belief in the existence of facts essential under law for the action and as would warrant men of ordinary caution, prudence, and judgement, under the circumstances, in entertaining it." One Fawcett Place Ltd., Partnership v.Diamandis Communications. Inc., 24 Conn. App. 524,589 A.2d 892 (1991).
The task of the trial court is essentially one of weighing probabilities; that task requires the exercise of broad discretion. Dow Condon, Inc. v. Anderson, 203 Conn. 475,479, 525 A.2d 935 (1987). "This weighing process applies to both legal and factual issues." Bank of BostonConnecticut v. Schlesinger, 220 Conn. 152, 156, 595 A.2d 872
(1991). In ruling on a prejudgment remedy motion, the court must evaluate not only the plaintiff's claim but also any defenses raised by the defendant. Haxhi v. Moss,25 Conn. App. 16, 591 A.2d 1275 (1991).
The defendant initially asserts that Dahlgren has no standing to bring this suit against FT absent a specific assignment of the corporation's cause of action. General Statutes 33-378 provides, however, that "any action or proceeding by . . . a dissolved corporation may be prosecuted . . . by the corporation in its corporate name." Thus, the defendant asserts that any claim made by Dahlgren for any commission owed by the corporation should be brought in the name of the corporation. While well taken, FT's position is moot. On January 25, 1996, Dahlgren moved to permit the substitution of Capital as the party plaintiff CT Page 4183 pursuant to Practice Book § 104. Said motion was granted by the court (Hendel, J) on February 26, 1996.
Both parties agree that Capital was dissolved on October 1, 1993. The court file, however, does not reflect how this dissolution was effectuated. Pursuant to General Statutes 33-378 (a), "[d]issolution terminates the corporate existence of the dissolved corporation."
 Once dissolved, the corporation shall cease to carry on its business and shall do only such acts as are necessary or expedient to collect, convey and dispose of such of its properties as are not to be distributed in kind to its shareholders, pay, satisfy and discharge or make adequate provisions for its liabilities and obligations, distribute its assets, and adjust and wind up its business and affairs as expeditiously as practicable, and for such purpose it shall continue as a corporation.
General Statutes § 33-378 (b).
Relying on this statute, the defendant asserts that since Capital could not have legally procured any new loans for FT Industries after October 1, 1993, it is not entitled to 5 per cent of any loan proceeds because such activity was outside the scope of a dissolved corporation's legal powers. The court notes, however, the plaintiff's complaint does not allege that Capital went out and procured loans on behalf of FT industries, but that FT industries procured its own loans from Carlon within one year of Capital doing the same. In opposition, Capital claims that the dissolution of the corporation, absent some specific language in the contract, does not invalidate a contract entered into with another party or entity. Therefore, Capital claims that it is entitled to a 5 per cent of the loan proceeds because FT violated its promise not to seek financing from any lender supplied by the plaintiff for a period of twelve months.[1]
Capital's reasoning, however, is misplaced. Once Capital was dissolved in October of 1993, it could not legally go out and procure any additional loans for FT Industries because it would not be winding-down its CT Page 4184 corporate affairs, but actually carrying on its business in violation of General Statutes § 33-378 (b). The real issue in this case, however, is not whether Capital could procure new loans for FT after its dissolution, but whether the agreement mandating that FT Industries not seek additional monies from any lender found by Capital for a period of twelve months is valid against FT once Capital was dissolved.
The court concludes that it is not based on the doctrine of impossibility. "Our law recognizes that performance of a contract is excused when the thing to be done becomes impossible." Barnett v. Barnett, 26 Conn. App. 355. 358, 600 A.2d 1055 (1992). Once Capital was dissolved in October of 1993, it became legally impossible for it to procure any new loans for FT Industries. Thus, FT was forced to go out and procure loans for itself. It would be extremely inequitable for the court to conclude that Capital is entitled to 5 per cent of the gross loan proceeds obtained by FT after Capital dissolved when it would have been legally impossible for Capital to either seek out additional monies or grant its consent for FT to do the same. Such activities would not be winding-up the affairs of a dissolved corporation.
The plaintiff relies on cases from other jurisdictions for the proposition that absent specific contract language to the contrary, the dissolution of a corporation does not invalidate a contract between the dissolved corporation and the other party to the contract. The cases relied upon, however, are clearly distinguishable in fact and law from the case at bar.
Kelly v. Allstores Corp., 613 A.2d 1163 (N.J. 1992) andShakey's Inc., v. Caple, 855 F. Sup. 1035 (E.D. Ark 1994), both concern a landlord/tenant relationship where the lessee is a corporation that was later dissolved, and the lessor attempts to terminate the lease on the basis of the lessee's dissolution. In each case, the court enunciated the general legal principle that "a lease to a corporation may, by its terms, terminate where the corporation ceases to exist. But unless the lease so provides, the rights and obligations thereunder are not extinguished by the corporation's dissolution, since leases affect property rights and survive the death of the parties." 16A Fletcher Cyclopedia CT Page 4185 Corporations § 8124. The other cases relied upon by the plaintiff from other jurisdictions are likewise equally irrelevant and inapplicable to the facts and issues in this case.
Based on the above discussion and the evidence submitted by the plaintiff at the prejudgment remedy hearing, the court finds there is probable cause to believe that Capital will prevail on its claim for commissions on any and all loans obtained by it for FT prior to Capital's dissolution on October 1, 1993. Therefore, a prejudgment remedy shall be granted in the amount of $2100 against the defendant FT Industries. Said amount represents the balance due ($1500) on the commission from the $60,000 loan obtained by Capital for FT as evidenced by the mortgage note dated February 24, 1993 (Plaintiff's exhibit 4) in addition to 5 per cent or $600 of the $12,000 loan also evidenced by a mortgage note given by FT to Carlon on the same day. (Plaintiff's exhibit 8).
CONCLUSION
For the above-stated reasons, the plaintiff's motion seeking a prejudgment remedy attachment against the defendant in the amount of $20,000 is denied. An attachment will be permitted against FT industries in the amount of $2,100 only.
Hurley, J.