## MAX STRAUS (A. E. JOHNSON AND COMPANY) *vs.* K. C. KAZEMEKAS.

Third Judicial District, New Haven, January Term, 1924.
WHEELER, C. J., BEACH, CURTIS, KEELER and KELLOGG, Js.

The construction of a contract, including the question whether or not any implied condition is attached to it, is for the court even in a jury trial, if the surrounding circumstances as to parties and subject-matter are undisputed.

Even though such circumstances are in dispute, the construction of the contract is not left with the jury; but the court may submit the case to them to find the facts, with proper instructions as to the various aspects in which they may present themselves, or the jury may find the facts specially and the court interpret the contract in view of the facts so found.

The principle of law—sometimes spoken of as "the frustration of a contract"—which excuses performance of a contract under certain conditions considered as creating an impossibility in law, rests upon the assumption that the parties acted with reference to the existence and continuance of a condition, or of a subject-matter, which was essential to the execution of their agreement.

Among implied conditions which frustrate a contract and excuse its performance, are those in which the impossibility arises from a change of law, those in which the specific thing essential to performance is destroyed, those in which by sickness or death, personal services or performance become impossible, and those in which

there is a cessation or continuation, without fault of either party, of the existence of some thing or state of things upon the continuation or cessation of which the contract was known to depend.

Where a contract makes provision for a certain contingency it is not for a court to import into it some other and different provision for the same contingency.

In November, 1918, the plaintiff agreed to sell and the defendant to buy a specified amount of Russian rubles, on future delivery, to be made as soon as practicable after the existing embargo upon their importation had been lifted by the government of the United States. This was done in December, 1920, and the defendant was then notified and informed that the plaintiff was ready to deliver, but the defendant declared he would not receive or accept the rubles. In an action on the contract, the trial court directed a verdict for the plaintiff. The defendant appealed, claiming that the case should have been submitted to the jury, and further, that the plaintiff's failure to offer delivery sooner was, under all the circumstances, including the fact that the defendant was purchasing the rubles to resell them, as the plaintiff knew, a frustration of the contract. *Held:*—

1. That as the surrounding facts and circumstances were not in dispute, there was no issue for the jury.

2. That since the contract was expressly made in contemplation of the existence of an embargo of indefinite duration, the court did not err in ruling that there was no implied condition requiring a delivery during the existence of the embargo.

Argued January 17th—decided March 31st, 1924.

ACTION to recover damages for the defendant's alleged wrongful refusal to accept and pay for 20,000 Russian rubles which he had ordered of, and agreed to purchase from, the plaintiff, brought to the Superior Court in New Haven County where a demurrer to the special defense and counterclaim of the defendant was overruled (*Banks*, *J*.) and the cause was tried to the jury before *Wolfe*, *J*.; the jury returned a verdict for the plaintiff for $2,581, as directed by the court, and from the judgment thereon the defendant appealed. *No error.*

*Frank P. McEvoy*, with whom was *Francis P. Guilfoile*, for the appellant (defendant).

*Abraham S. Bordon,* and *H. H. Nordlinger* of New York City, for the appellee (plaintiff).

CURTIS, J.   In the complaint the plaintiff alleged a contract with the defendant in the following terms: "On November 13th, 1918, the plaintiff and defendant entered into a contract whereby the plaintiff agreed to sell, and the defendant agreed to buy, 20,000 Russian rubles at $22.75 per hundred rubles on 'future delivery,' same to be delivered as soon as practicable after importation of Russian currency is permitted, said contract also requiring the defendant to pay 50% of the purchase price as a deposit upon entering into the contract, and the balance upon being notified that the said rubles were ready for delivery"; and further alleged that he had offered to perform, but that the defendant had refused to accept performance and perform on his part.

The defendant filed a special defense and counterclaim alleging, in substance, that before an offer to perform was made by the plaintiff the embargo upon the importation of Russian currency, referred to in the contract, had continued so long as to entirely frustrate, in a commercial sense, the objects of the contract as impliedly contemplated by the parties, and hence that the contract terminated as to both parties under an implied condition of the contract to that effect, and that the defendant was entitled to recover the 50% of the purchase price paid by him under the contract.   The plaintiff denied these allegations.

The case was tried to the jury and at the conclusion of the evidence the court directed a verdict for the plaintiff on the complaint and counterclaim, and accordingly a verdict and judgment was so rendered.

Upon the trial, evidence was received as to the actual making of the contract, and also as to the surrounding

circumstances relating to the parties and the subject-matter at and subsequent to the making of the contract. The court, deeming that the relevant facts as to such surrounding circumstances were undisputed, and that therefore the construction of the contract, including the existence of any implied condition creating an impossibility of performance in law, was a question for the court without aid from the jury, directed a verdict for the plaintiff. The court thereby indicated that in its opinion under the evidence there was no condition implied by law excusing the defendant from performance.

The defendant claims that the court erred in directing a verdict, in that under the evidence the matter should have been left to the jury, and also because under the evidence the plaintiff was not entitled to a verdict. These claims make a review of the evidence necessary.

From this it appears that the court properly held that the relevant surrounding circumstances as to the parties and the subject-matter of the contract were undisputed. The plaintiff, in 1918, was a private banker in New York City who dealt in Russian rubles, and the defendant was a private banker in Waterbury who also dealt in such rubles. In November, 1918, the plaintiff and the defendant entered into a contract for the purchase and sale of Russian rubles. This contract was made by the exchange of the following letters:—

On November 13th, 1918, the plaintiff wrote the defendant as follows: "We acknowledge receipt of your wire—' Wire at once what rate cash twenty thousand rubles ' and confirm our reply: Offer twenty thousand cash rubles immediate delivery five hundreds at twenty-five twenty-five, hundreds at twenty-five fifty, offer future delivery soon as practicable after per-

mission received by us to import assorted denominations, twenty-two seventy-five deposit, fifty per cent with order, balance upon arrival rubles New York both quotations subject change immediate telegraphic acceptance."

On November 13th, the defendant replied as follows: "Please find enclosed our check for $7,350 in payment of 20,000 cash rubles immediate delivery and 50 per cent on 20,000 cash rubles future delivery, as per following statement: 1. Immediate delivery:

Rs. 10,000 in denomination of 500's at 25.25 . $2,525.00
Rs. 10,000 in denomination of 100's at 25.50 . 2,550.00
2. Future delivery:.
Rs. 20,000 . . . . . . 50% at 22.75 . . . . . . . . . . 2,275.00

Total . . . . . . . . . . $7,350.00"

In reply the plaintiff, on November 14th, wrote as follows: "We confirm having sold you 20,000 cash rubles, Russian currency old issue,

10,000 denomination Rs. 100 each
10,000 denomination Rs. 500 each

"The importation of Russian currency is prohibited at the present time. After permission is obtained for the import and export of Russian currency we will deliver to you rubles 20,000 as soon as practicable.

"We acknowledge having received your check for $2,275 on account of this sale. The balance $2,275 is to be paid upon our notifying you of the arrival of the rubles in New York."

The defendant made no reply to the letter of November 14th.

In November, 1918, the United States Government had placed an embargo on the importation of Russian rubles.

When the above contract was made the plaintiff contracted and paid for rubles to meet this contract,

with the same specifications as to delivery as in his contract with the defendant.

The government embargo on the importation of Russian rubles was raised on December 18th, 1920.

Meanwhile, on February 7th, 1919, the defendant wrote to the plaintiff requesting him to cancel the contract and to repay him the $2,275 paid by him, or to send him the 20,000 rubles ordered at the existing rate on February 7th, 1919. On February 10th, the plaintiff wrote insisting on the continuance of the contract, and stating that as soon as he was ready to make delivery according to the terms of the contract, he would notify the defendant. The market price for rubles in New York City on February 10th, was 18 cents each.

On June 11th the defendant wrote again requesting the plaintiff to cancel the contract and refund the $2,275 paid by him. On July 15th, 1919, the plaintiff wrote the defendant as follows: "We are ready to make delivery to you of the 20,000 Russian rubles which you purchased from us on November 14, 1918, and which are now being held here for your account and risk. Kindly remit by return mail New York draft for balance due of $2,275 and we will forward the rubles in accordance with your instructions." At that time the embargo had not been raised, but the plaintiff found that he was able to secure the rubles in New York City for immediate delivery by paying an advance of several points, and was willing to undergo such loss in order to accommodate the defendant by an immediate delivery. This offer the defendant refused to accept and claimed the right to have the contract cancelled and his payment returned. On January 12th, 1920, the defendant wrote again requesting the return of the $2,275 paid by him, and stating in substance that he considered the contract at an end. On

January 14th, 1920, the plaintiff replied refusing to return the $2,275 and insisting upon the defendant carrying out the contract of November, 1918, in accord with its terms.

On December 18th, 1920, the embargo was raised, and on December 24th, the plaintiff telegraphed and wrote to the defendant offering and asking immediate compliance with the contract of November, 1918. The defendant replied refusing to accept performance or to perform himself, and asking for the refund of the $2,275 paid by him. When the embargo was raised there was a market for Russian rubles in New York City at twelve cents per ruble, and in the defendant's bank in Waterbury there was no market (demand) for rubles, although in another similar bank in Waterbury there was a market (demand) for rubles. Before the embargo, upon an order for Russian rubles for future delivery, a reasonable time for delivery was from four to six weeks. A contract for the future delivery of Russian rubles, meant a contract for delivery after a reasonable time for procuring the rubles from Russia, if no specific time was stipulated. The defendant entered into this contract with the object of reselling at his bank in Waterbury.

It appears from the recital of undisputed facts, that on July 15th, 1919, eight months after the contract was made, the plaintiff offered to perform the contract by a delivery of the 20,000 rubles contracted for, upon the defendant's paying the $2,275 as per contract. This offer the defendant refused to accept. Under this state of facts the case must be dealt with by us as in the same situation as if the embargo had been removed on July 15th, 1919, about eight months after the contract was made.

We now come to the question, whether under these undisputed facts the trial judge correctly held that

there were no questions to be left to the decision of the jury, and further, if he correctly so held, whether he correctly held, as a matter of construction, that under the facts proved there was no implied condition attached to the contract which excused the defendant from its performance and dissolved the contract upon the ground of impossibility or frustration in law.

The court correctly held that on the undisputed facts the construction of the contract, including the decision of the question as to whether there was any implied condition as claimed, was a matter for the court to decide.

The principle of law which excuses the parties to a contract from the performance of it under certain implied conditions, considered as creating an impossibility in law and sometimes spoken of as the frustration of a contract, seems first to have been considered by us in 1857, in the case of *School District* v. *Dauchy*, 25 Conn. 530. We then said: "We believe the law is well settled, that if a person promises absolutely, without exception or qualification, that a certain thing shall be done by a given time, or that a certain event shall take place, and the thing to be done or the event is neither impossible or unlawful, at the time of the promise, he is bound by his promise, unless the performance, before that time, becomes unlawful. Any seeming departure from this principle of law (and there are some instances that at first view appear to be of that character), will be found, we think, to grow out of the mode of construing the contract or affixing a condition, raised by implication from the nature of the subject, or from the situation of the parties, rather than from a denial of the principle itself. Such, for instance, as a promise to marry, where it must be presumed that the parties agreed to intermarry if they shall be alive; or a promise to deliver a certain horse at a future time, and before

the day arrives, the horse dies; in which case, the parties are held to have contracted in view of that contingency. In these and like cases, the court will hold that the parties did not understand that the thing was to be done, unless the life of the persons, or of the horse, was continued, so that there would be an object and an interest in the execution of the contract. These and a few other exceptions of a similar character, are to be found in the books, but they are not so much exceptions after all as cases where the intention of the parties is presumed or inferred, though not expressed, from their peculiar situation."*

In *School District* v. *Dauchy, supra,* we speak of such implied conditions *arising from a construction* of a contract from the situation of the parties or from the subject-matter. Under our law the construction of a contract, when the surrounding circumstances as to parties and subject-matter are undisputed, is for the court even in jury trial. *Jordan, Marsh & Co.* v. *Patterson,* 67 Conn. 473, 479, 35 Atl. 531. Where the facts as to the circumstances surrounding the transaction and the situation of the parties are in dispute, the construction of a contract is not submitted to the jury. The court may submit the case to the jury to find the facts, with proper instruction as to the various aspects in which they may present themselves, or the jury may find the facts specially (as by use of interrogatories), and the court interpret the contract in view of the facts so found. 13 Corpus Juris, p. 786, § 997. Thayer, in his "Treatise on Evidence at the Common Law," p. 205

* Note: It is of interest that *School District* v. *Dauchy, supra,* decided in 1857, antedated the case of *Hall* v. *Wright,* Ellis, B. & Ellis, 746, decided in 1858, and the case of *Taylor* v. *Caldwell,* 3 Best & Smith, 824, decided in 1863, which are often spoken of as the original authorities as to excusing performance of a contract because of such implied conditions.

and notes, quotes a passage from Baron Parke on the duty of the court to construe instruments to the above effect, which concludes as follows: "Unless this were so, there would be no certainty in the law; for a misconstruction by the court is a proper subject by means of a bill of exceptions, of redress in a court of error; but a misconstruction by the jury cannot be set right at all effectually." Thayer continues: "Whatever their character, and however used, the construction of writings, when once the facts necessary for fixing it have been ascertained, whether properly to be called a matter of fact or of law, was a matter for the courts and not for the jury. This has always been so. . . . An established judicial usage like this has always been powerfully supported by considerations of good sense and expediency." Written instruments "should have a fixed meaning; should not be subject to varying interpretations; should be construed by whatever tribunal is most permanent, best instructed, most likely to adhere to precedents." This language of Prof. Thayer is particularly pertinent to that field of construction which involves implying conditions in a contract which excuse its performance; conditions which formerly would not excuse performance unless it were specifically so provided in the contract. The court, therefore, correctly held that the question whether or not any implied condition was attached to this contract as claimed was a question for the court to determine. See also *Cohen* v. *Berlin & Jones Envelope Co.*, 166 N. Y. 292, 299, 59 N. E. 906.

The question arising is, did the court correctly hold that, under the evidence, there was no implied condition attached to the contract as claimed? The law as to implied conditions in a contract excusing performance on the ground of impossibility, actual or in a commercial sense, as implied by law, is of recent origin.

Williston on Contracts, Vol. 3, Chap. 53. Prof. Williston said in 1920 that the tendency of the law is toward an enlargement of this defense. In the recent case of *Matthey* v. *Curling*, 2 A. C. (1922) 180, 210 (See also *Bank Line, Ltd.* v. *Capel & Co.*, A. C. (1919) 435, 459), the court intimates that the doctrine of frustration ought not to be extended. The early strict rule of the common law, in relation to a claim of impossibility as an excuse for the nonperformance of a contract, was that inability to execute an absolute, executory contract, due to subsequent unforeseen accident or misfortune without the fault of either party, would not excuse performance. The case of *Paradine* v. *Jane*, Aleyn's Rep. 26, 27, states the law as follows: "When the party by his own contract creates a duty or charge upon himself, he is bound to make it good, if he may, notwithstanding any accident by inevitable necessity, because he might have provided against it by his contract." In other words, it was held that circumstances creating an impossibility of performance would not prevent the recovery of damages for nonperformance unless the contract so provided as to such circumstances. It has been said in an able opinion that this rule prevailed in all its severity until the decision in 1858 of *Hall* v. *Wright*, Ellis, B. & Ellis, 746. *Kinzer Const. Co.* v. *State*, 125 N. Y. Supp. 46, 50. Since the middle of the last century at least, the courts in England and in this country have modified the rigid rule, upon the theory that the event which rendered the performance impossible should be *implied as a matter of law*, as a condition excusing performance. Williston on Contracts, Vol. 3, Chap. 53. The English case of *Taylor* v. *Caldwell*, 3 Best & Smith, 826, and others, support a rule to the following effect: Where, from the nature of the contract and the surrounding circumstances, the parties from the beginning must have known that it could not be fulfilled unless,

when the time for fulfillment arrived, some particular thing or condition of things continued to exist, so that they must be deemed, when entering into the contract, to have contemplated such continuing existence as the foundation of what was to be done; in the absence of any express or implied warranty that such thing or condition of things shall exist, the contract is to be construed as subject to an implied condition that the parties shall be excused, in case, before breach, performance becomes impossible or the purpose of the contract frustrated from such thing or condition ceasing to exist without default of either of the parties. 12 A. L. R. 1276. Three such implied conditions have become firmly established in the common law: 1. Where the legal impossibility arises from a change of law. 2. Where the specific thing which is essential to the performance of the contract is destroyed. 3. Where by sickness, or death, personal services or performance become impossible. A fourth implied condition is often recognized, which is difficult of a satisfactory statement. It has been stated substantially as follows: 4. Among the ways in which any contract ends and is dissolved, is the cessation or continuation of the existence of some thing or state of things upon the continuation or cessation of which the contract was known to depend, provided such cessation or continuation arises without fault in either contracting party. *The Claveresk*, 264 Fed. Rep. 276.

In the instant case there was no dispute as to the claimed relevant circumstances surrounding the parties or as to the subject-matter, when this contract was made and subsequent thereto. The question is, was any condition, vital to the continued validity of this contract, to be implied by law as a part of this contract from the circumstances surrounding the transaction and the condition of the parties? The trial court by

its action in directing a verdict necessarily ruled that there were no such implied conditions.

It is to be observed at the outset that there was no actual impossibility to perform the exact terms of this contract; all that could be claimed was impossibility in a commercial sense implied by law. The defendant claims that under the evidence the court should have held that there was an implied condition attached to the contract to this effect: that it should be dissolved unless the plaintiff could deliver the 20,000 rubles within a reasonable time, that is, four to six weeks, after the execution of the contract. The court properly refused to so construe the contract. The fact that an existing embargo of indefinite extent upon the importation of Russian rubles was known to the parties in making the contract and the contingency of its continuing provided for by the provision that the plaintiff should deliver the rubles as soon as practicable after the importation of Russian currency was permitted, excluded any implied condition that they should be delivered in a reasonable time. Where a contract makes provision for a certain contingency, it is not for a court to import into the contract some other and different provision for the same contingency. The claim of the defendant that the court should have construed this contract as if there were no provision in it relating to delivery if the embargo continued, is clearly untenable. *Bank Line, Ltd.* v. *Capel & Co.,* A. C. (1919) 435.

The defendant claims, further, that even if the court properly ruled upon the above claim, yet it should have held that there was an implied condition that if the embargo continued such a length of time as to make it unreasonable in the eyes of the law to require the contracting parties to go on with the contract, the parties were to be released from further per-

formance and the contract terminated. Statements
of law to that effect can be found. *Bank Line, Ltd.*
v. *Capel & Co., supra.* In the instant case, the parties
contracted while the embargo was in force and made
a provision in the contract relating to its continuance.
In Williston on Contracts, Vol. 3, § 1963, the author
says as to impossibility in the eye of the law as a de-
fense: "The true distinction is not between difficulty
and impossibility. . . . The important question is
whether an unanticipated circumstance, the risk of
which should not fairly be thrown upon the promisor,
has made the performance vitally different from what
was reasonably to be expected." The trial judge could
reasonably have deemed that an embargo continuing
until July 15th, 1919 (when the plaintiff offered to
perform), might reasonably have been expected when
the contract was made. In L. R. A. 1916F, p. 26,
the law is stated as follows: "The general proposition
is well settled that if the thing to be performed does
not become in its nature impossible of performance
[as is the case here], the new fact that it has become
difficult or unprofitable or even impossible for the
promisor is not ordinarily a defense." The court
could reasonably infer that the contingency of an
extended embargo ought reasonably to have been an-
ticipated by the defendant and provided for in the
contract. Ordinarily a contingency which the law will
imply from the surrounding circumstances as one which
the parties ought reasonably to have anticipated, must
be provided for by the terms of the contract, else the
impossibility of performance resulting therefrom will
not excuse either party from carrying out the contract.
But a contingency which the law will not imply, from
the surrounding circumstances, that the parties ought
reasonably to have anticipated, has been held to ex-
cuse liability for a breach of the contract if it happened

without the fault of either party.  *Mahaska County State Bank* v. *Brown,* 159 Iowa, 577, 585, 141 N. W. 459.

In the present case, the existence of an embargo of indefinite duration was not only reasonably to have been anticipated, but was known to the parties to exist and the contingency of its continuance provided for in the contract.  For the foregoing reasons, the trial court did not err in directing a verdict for the plaintiff.  The reasons of appeal numbered one, two, three and nine, are, for the same reasons, not sustainable.

As to the reasons of appeal four, five and six relating to the admission of evidence, the evidence admitted against objection was of such a nature that even if erroneously admitted, the errors were harmless in view of the law governing the case as set forth above. The defendant was asked as follows: "In order for you to sell those rubles which you bought in 1918, when was it necessary that they be delivered to you?" Also: "Were you able to get those rubles within a reasonable time after you agreed to purchase them?" Upon the plaintiff's objection, these inquiries were excluded and the defendant duly excepted.  Any answer to these inquiries expressing undisclosed opinions of the defendant obviously would not present any surrounding fact or circumstance that could be considered by the court as relevant in determining whether the contract made contained an implied condition excusing its performance.  There was no error in their exclusion.

There is no error.

In this opinion the other judges concurred.