## SHARON BARNETT *v.* JAMES BARNETT
### (8644)

DUPONT, C. J., DALY and O'CONNELL, Js.

Argued October 4, 1991—decision released January 7, 1992

*Robert K. Lesser* and *Patricia J. Conway* filed a brief for the appellant (defendant).

*Jonathan J. Klein,* for the appellee (plaintiff).

O'CONNELL, J. The defendant appeals following the denial of his motion to open and set aside the judgment dissolving his marriage.[1] He claims that the trial court

---

[1] The plaintiff moved for dismissal of this appeal because of the defendant's failure to be present before this court for argument. We reserved decision on the motion and now deny it. We will decide the appeal on its merits.

improperly failed to open and set aside the award of lump sum alimony and the distribution of marital assets because the judgment was based upon a mutual mistake as to the equity in the marital home. The plaintiff also claims that the doctrine of impossibility of performance and the equitable principles of justice and fairness substantiate his contention that the trial court acted improperly in denying his motion to open the judgment. We affirm the judgment of the trial court.

The record discloses that the marriage between the parties was dissolved on February 16, 1989, at which time the trial court adopted the agreement of the parties as read into the record by them during the course of the trial. The relevant portions of the agreement provided that the marital residence would be listed for sale at an asking price of not less than $325,000. The defendant guaranteed that the plaintiff would receive $50,000, with $15,000 to be advanced within two weeks from the date of dissolution and the balance to be paid at the real estate closing. In the event that the net proceeds of the sale exceeded $50,000, the plaintiff would keep the excess.[2] Also, depending on the sale price, the defendant would be reimbursed the $15,000 from the sale proceeds or would pay the plaintiff any unpaid portion of the $35,000 balance.[3] In the event of a shortfall in the sale price, the defendant would hold the plaintiff harmless from any deficiency.[4]

[2] "Net proceeds" was defined as the purchase price less the amount due on three mortgages, together with tax payments, adjustments, broker fees and reasonable attorney's fees.

[3] Upon receipt of the balance of the $50,000, the plaintiff was to transfer to the defendant, her shares of stock in his business.

[4] "[Plaintiff's Counsel to the Plaintiff]: Now, your husband guarantees that all mortgages, [lien]-holders, attorney's fees, everything in connection with this property, that—these payments, if there is a shortfall in the sale of the house—that he will see that these things are paid, and he will hold you harmless.

At the time the judgment was rendered, both parties were aware that a mortgage foreclosure had progressed to the stage that a date for a foreclosure sale had been set. The parties' aspiration that a private sale might avoid a less advantageous foreclosure sale was not realized and about three months later, the third mortgagee purchased the property at the foreclosure sale for $245,000. This purchase triggered the defendant's guarantee to pay the plaintiff the remaining $35,000.

We commence our analysis with a determination of the nature of the defendant's $50,000 guarantee. It is clear that no matter what price the property brought, the plaintiff was to receive $50,000. Such an award constitutes lump sum alimony which is a final judgment not modifiable by the court even if there is a change in circumstances. *Turgeon* v. *Turgeon,* 190 Conn. 269, 282, 460 A.2d 1260 (1983); *Miller* v. *Miller,* 16 Conn. App. 412, 416, 547 A.2d 922, cert. denied, 209 Conn. 823, 551 A.2d 430 (1988). When a judgment is rendered based on the parties' agreement, however, it may be opened if there is a showing that it was obtained through fraud; *Billington* v. *Billington,* 220 Conn. 212, 217–18, 596 A.2d 1377 (1991); or mutual mistake. *Solomon* v. *Keiser,* 22 Conn. App. 424, 427, 577 A.2d 1103 (1990).

On appeal, the defendant argues that the judgment arose out of a *mutual* mistake concerning the equity in the marital home. *Mutual* is the key word here. Even if we assume, arguendo, that the defendant, an expe-

---

"[Defense Counsel]: What he has agreed to do—You are reading more into it than it says. What he has agreed to do, there will not be the deficiency against her. That is what is guaranteeing.

"[Plaintiff's Counsel]: No deficiency against the wife?

"[Defense Counsel]: Correct.

"[Plaintiff's Counsel]: And he is going to hold her harmless.

"[Defense Counsel]: He is going to guarantee her fifty thousand."

rienced real estate broker, did not realize that in this day of falling real property values a foreclosure sale would bring a price substantially below the appraised value, he nevertheless fails to demonstrate that the plaintiff was likewise mistaken. If both parties were certain that the sale price would be adequate to pay the plaintiff at least $50,000, no guarantee would have been required. A simple statement that the plaintiff would receive $50,000 from the net proceeds of the sale would have sufficed. The plaintiff, however, did not agree to such a provision. Rather, she protected herself with the defendant's guarantee that if the house was sold at a low price she would nevertheless receive $35,000 in addition to the $15,000 that the defendant would pay her two weeks after the dissolution. We are not persuaded that the parties intended this guarantee to be tied to their opinions of the property value or to the net sales price.

The defendant next argues that because of the low foreclosure sale price he lacks the money to carry out the agreement and therefore performance of the agreement is rendered impossible. Our law recognizes that performance of a contract is excused when the thing to be done becomes impossible. See *Straus* v. *Kazemekas,* 100 Conn. 581, 588–89, 124 A. 234 (1924). The *Straus* court articulated an example of the type of impossibility which would excuse performance of a contract as the following: If a person contracts to deliver a certain horse at a future time and the horse dies before the delivery date, the law will excuse performance because it is presumed that the parties contracted for delivery on the condition that the horse would be alive on the delivery date. Id. Here, the foreclosure sale had already been ordered when the defendant voluntarily entered into the agreement upon which the judgment was founded. There is, therefore, no basis for the defendant's contention that he expected a private sale

to have resulted in a greater sale price thereby leaving him with sufficient funds to pay this guarantee.

At best, the defendant's position amounts to a claim that the judgment should be opened and set aside on the ground of impossibility of performance because he does not have the money to carry out the agreement. We determined earlier in this decision that the defendant's guarantee was a final judgment. The defendant has furnished us with no Connecticut authority, nor are we aware of any, that allows a party to avoid payment of a judgment on the basis of impossibility of performance due to lack of funds. Furthermore, we note that the record does not support the defendant's contention that he lacks sufficient resources from which he can satisfy the judgment. Among other assets the defendant could liquidate is a business that he has offered for sale for $185,000.

The defendant's final argument, to the effect that equity required the trial court to grant relief, is merely a summary of his mutual mistake and impossibility of performance arguments and therefore requires no further discussion by us.

The trial court properly declined to open the judgment.

The judgment is affirmed.

In this opinion the other judges concurred.