## ROBIN MAGOWAN *v.* CAROL MAGOWAN
## (AC 22783)

Mihalakos, Flynn and Hennessy, Js.

Submitted on briefs September 16–officially released November 26, 2002

*Julia B. Morris* and *James T. Flaherty* filed a brief for the appellant (plaintiff).

*Carlo Forzani* filed a brief for the appellee (defendant).

*Opinion*

PER CURIAM. The plaintiff, Robin Magowan, appeals from the trial court's judgment denying his motion to open the judgment that dissolved his marriage to the defendant, Carol Magowan, and incorporated the property settlement agreement at issue. The plaintiff claims that the court improperly denied his motion to open, which was filed more than four months after the rendering of the dissolution judgment, because there was a mutual mistake of fact by both parties concerning the settlement agreement. We affirm the judgment of the trial court.

The following facts and procedural history are necessary for the resolution of the plaintiff's appeal. The parties' marriage was dissolved on April 20, 1999. The dissolution judgment as to division of property was based on a settlement agreement that the parties provided to the court. The parties had met with an attorney who acted as a mediator in reaching the settlement agreement. The parties were advised by the mediator to consult with an attorney prior to signing the settlement agreement.[1] The majority of the marital assets were the plaintiff's, and his assets included beneficial interests in two trusts established by his family. One of the trusts was set up in 1959 (1959 trust), and the plaintiff is entitled to income from it and to invade the principal. The second trust was set up in 1986 (1986 trust) and, although the plaintiff is the income beneficiary, he is not able to invade the principal in that trust.

The portion of the judgment incorporating the settlement agreement that is relevant to this appeal concerned the home shared by the parties prior to the dissolution of their marriage and another to be built for the plaintiff after the dissolution. That portion of the settlement agreement states: "[The defendant] will continue to reside as long as she chooses in the family home at 16 Taconic Road, Salisbury, Connecticut, which property is part of the trust assets provided for by [the plaintiff's] father in the trust set up for him in 1959. [The defendant] shall have the right to quiet enjoyment of said home, free from interference by [the plaintiff]. [The defendant] is building a home for [the plaintiff] on said property using funds from said trust. This will result in their having homes in close proximity to each other, on the same property, thus facilitating their shared physical custody of [their minor child].

[1] The record indicates that the plaintiff did, in fact, consult an attorney before signing. The record is unclear whether the defendant consulted an attorney before or after signing.

Until June 1, 1999 [the plaintiff] shall have the responsibility to pay the costs associated with the maintenance of all of said property, including [the defendant's] housekeeper, the caretaker of the property and its gardeners. It is the parties' intention that beginning June 1, 1999 the trustee of what the parties refer to as [the plaintiff's] '1986 trust' shall pay the mortgage, taxes and insurance related to said property and shall place the remaining income from said trust in a joint bank account to be established by the parties out of which they shall pay for any capital improvements to the property or either party's home thereon, maintenance of the property or either party's home thereon equalling $2,000 or more and the cost of the property's caretaker and the housekeeper either/both parties employ shall be paid out of said income. It is the parties' intention that the property taxes on said property should be paid for by the trust."

The plaintiff did, in fact, have funds from the 1986 trust authorized to pay for construction of a residence for himself on the property. Thus, that portion of the stipulated judgment providing that the defendant construct him a home on the land has been fulfilled. On October 24, 2001, the plaintiff filed a motion to open the judgment pursuant to General Statutes § 52-212a[2] due to a mutual mistake of fact by both parties. One of the alleged mistakes in the settlement agreement about which the plaintiff appeals is that the property

[2] General Statutes § 52-212a provides in relevant part: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, a civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed. . . ."

According to our Supreme Court, "[i]t necessarily follows that if the judgment conforms to the stipulation it cannot be altered or set aside without the consent of all the parties, unless it is shown that the stipulation was obtained by fraud, accident or mistake." (Internal quotation marks omitted.) *Gillis* v. *Gillis*, 214 Conn. 336, 340, 572 A.2d 323 (1990).

on which the family home is situated was, in fact, owned by the 1986 trust and not the 1959 trust, as incorrectly stated in the settlement agreement. Another "mistake" cited by the plaintiff is that the trustees of the 1986 trust will no longer "perform certain functions" that were anticipated when the settlement agreement was made a part of the stipulated judgment. According to the plaintiff, the trustees have decided that it is their fiduciary duty to discontinue paying the expenses of the property and want to sell all the real estate on which both the former marital home and the plaintiff's newly constructed home are located.[3] As a result of a sale of the property, the defendant would not be allowed to live in the home, as stated in the settlement agreement and adjudged by the court in accordance with that stipulated agreement.

On January 9, 2002, the court held an evidentiary hearing regarding the motion to open the judgment. The testimony from the two parties at the hearing contained no material factual differences. On January 29, 2002, the court denied the motion and stated in its memorandum of decision: "From the testimony and evidence presented to this court, this court concludes that there was no mutual mistake in this matter. What the plaintiff is seeking to accomplish is to open the judgment to modify the property assignment due to a change in circumstances postjudgment."

We begin our analysis by setting forth our standard of review. The parties entered a stipulated agreement in dissolving their marriage. "A stipulated judgment is not a judicial determination of any litigated right. . . . It may be defined as a contract of the parties acknowledged in open court and ordered to be recorded by a court of competent jurisdiction. . . . [It is] the result

---

[3] According to testimony at the hearing on the motion to open the judgment, one of the trustees of the 1986 trust is the plaintiff's brother.

of a contract and its embodiment in a form which places it and the matters covered by it beyond further controversy. . . . The essence of the judgment is that the parties to the litigation have voluntarily entered into an agreement setting their dispute or disputes at rest and that, upon this agreement, the court has entered judgment conforming to the terms of the agreement. . . .

"It necessarily follows that if the judgment conforms to the stipulation it cannot be altered or set aside without the consent of all the parties, unless it is shown that the stipulation was obtained by fraud, accident or mistake. . . .

"In determining whether a stipulated judgment was, as is claimed here, the product of accident or mistake, we have observed: A motion to open and vacate a judgment . . . is addressed to the [trial] court's discretion, and the action of the trial court will not be disturbed on appeal unless it acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action. . . . The manner in which [this] discretion is exercised will not be disturbed so long as the court could reasonably conclude as it did." (Citations omitted; internal quotation marks omitted.) *Gillis* v. *Gillis*, 214 Conn. 336, 339–41, 572 A.2d 323 (1990).

A portion of the agreement that the plaintiff argues is based on a mistake contains the phrase "[i]t is the parties intention" that the trust pay certain expenses after June 1, 1999. The plaintiff did not condition his obligations under the agreement on the fulfillment of that intention, however. The plaintiff now claims that the trustees have stated that they will not fulfill those *intentions*. The court did not find that the trustees gave both parties any assurances prior to the dissolution judgment that they would act as the parties desire or

that each mistakenly thought they had such assurances from the trustees when they entered the stipulation. The *intentions* of the contracting parties about what third party trustees would do have not been fulfilled, but the fact that a third party is not going to satisfy those intentions is not a mistake that can be a basis to open the judgment. At best, it is a poor prediction after the stipulation and judgment that a third party will honor the parties' desire that the trustees pay certain expenses. Although the contract expresses intentions that the trust be bound to continue to pay expenses and hold title to the property, there is no mutual mistake because the plaintiff knew the terms of the 1986 trust. He also was aware that he did not have the right to demand invasion of the trust or demand performance from the trustees of the kind of retentions of the real estate and payment of expenses associated with its maintenance that the agreement contemplated. His intention, therefore, cannot arise out of a mutual mistake.[4]

The only remaining portion of the agreement that deals with a term that is not couched by the phrase "it is the parties' *intention*" is the provision that would allow the defendant to reside on the property for "as long as she chooses in the family home." (Emphasis added.) The plaintiff states that the error in the agreement that the property was owned by the 1959 trust is significant because the plaintiff had some control over that trust and did not have control over the 1986 trust. However, both parties testified at the hearing on the motion to open the judgment that they knew at the time the agreement was reached that the 1986 trust

---

[4] That decision does not address whether the nonperformance of the terms of the stipulated judgment could give rise to another cause of action or a different motion. The decision is limited to the sole issue of what has been raised before us on appeal, namely, whether the court improperly denied the motion to open the judgment because there was a mutual mistake at the time the agreement was reached.

owned the property. The plaintiff also was aware that he could not invade the principal without the approval of the trustees. The plaintiff also received funds from the trustees of the 1986 trust to build his residence on the property after requesting that the trustees invade the principal. "A mutual mistake is one that is common to both parties and effects a result that neither intended." *Regis* v. *Connecticut Real Estate Investors Balanced Fund, Inc.*, 28 Conn. App. 760, 765, 613 A.2d 321, cert. denied, 224 Conn. 907, 615 A.2d 1048 (1992), citing *Lopinto* v. *Haines*, 185 Conn. 527, 532, 441 A.2d 151 (1981). The statement in the agreement concerning which trust actually owned the property, therefore, is a technical scrivener's error and cannot be a mutual mistake on the part of the parties because they were aware at all times which trust actually owned the property.

The plaintiff also argues that the trustees consider that the defendant's continued occupation of the property is a violation of their fiduciary duty and that they intend to sell the property. As a result of the sale of the property to a third party, the defendant would not be allowed to reside on the property. The plaintiff asserts that the parties were mutually mistaken in their belief that the trustees would continue to allow the defendant to reside on the property. Again, the court made no finding that the trustees gave any assurances about which there was a mutual mistake concerning how long they would hold title.

The facts of this case are similar to those in *Barnett* v. *Barnett*, 26 Conn. App. 355, 600 A.2d 1055 (1992). In *Barnett*, the defendant argued that the trial court improperly denied a motion to open and to set aside an award of lump sum alimony based upon a mutual mistake as to the amount of equity in the marital home. Id., 355–56. The defendant had *expected* to be able to sell the marital home for more than was received at a

foreclosure sale and, thus, to use those funds to pay the lump sum alimony. Id., 357–58. This court stated: "At best, the defendant's position amounts to a claim that the judgment should be opened and set aside on the ground of impossibility of performance because he does not have the money to carry out the agreement. . . . The defendant has furnished us with no Connecticut authority, nor are we aware of any, that allows a party to avoid payment of a judgment on the basis of impossibility of performance due to lack of funds." Id., 359.

The court in *Barnett* also held that the record did not support the defendant's contention that he could not satisfy that portion of the agreement. Id. So, too, the plaintiff in this case has not argued that because of lack of funds to purchase the property from the 1986 trust, he cannot conform to the agreement to allow the defendant to remain in the marital home.[5] As in *Barnett*, the impossibility of requiring performance by the trustees in the current case resulting from a circumstance that occurred after the judgment is not a basis for opening the judgment. See id.

In addition, the plaintiff showed that he was aware that he did not possess the authority to allow the defendant to remain on the property when he stated that he was aware at all times that the 1986 trust owned the property.[6] Therefore, there can be no *mutual* mistake.

---

[5] We note that the plaintiff has considerable assets, and the agreement only states that the trust *currently* owns the property. The agreement does not state that the trust will or must continue to own the property in the future.

[6] The hearing transcript reveals in relevant part the following:

"[Plaintiff's Counsel]: Is [the property] owned by a trust?

"[Plaintiff]: Yes, it is.

"[Plaintiff's Counsel]: And what trust owns [the property]?

"[Plaintiff]: The 1986 trust. . . .

"[Plaintiff's Counsel]: And what are your rights under the 1986 trust?

"[Plaintiff]: The 1986 trust, I have only rights as income beneficiary. I cannot invade it for any reason whatsoever.

* * *

"[Plaintiff's Counsel]: . . . [W]hat's your understanding of your rights

The kind of mistake that would justify the opening of a stipulated judgment under § 52-212a must be mutual; a unilateral mistake will not be sufficient to open the judgment. *Solomon* v. *Keiser*, 22 Conn. App. 424, 427, 577 A.2d 1103 (1990); see also *Acheson* v. *White*, 195 Conn. 211, 215–16, 487 A.2d 197 (1985); *Celanese Fiber* v. *Pic Yarns, Inc.*, 184 Conn. 461, 466, 440 A.2d 159 (1981) (" '[i]t is a well-established general rule that even a judgment rendered by the court upon the consent of the parties, which is in the nature of a contract to which the court has given its approval, can subsequently be opened [after the four month limitation] . . . if it is shown that the stipulation, and hence the judgment, was obtained by fraud, in the actual absence of consent, or because of mutual mistake' ").

In addition, the court correctly noted that the court's jurisdiction over property assignment under General Statutes § 46b-81[7] is limited. See *Bender* v. *Bender*, 258

under the 1986 trust?

"[Plaintiff]: I have only the right as income beneficiary to have what money happens to be there to be distributed as income to me.

"[Plaintiff's Counsel]: Is it your understanding that you have the right to invade the trust, invade the corpus of the trust?

"[Plaintiff]: I do not have the right to invade.

\* \* \*

"[Defendant's Counsel]: Now, you knew, did you not, that the 1986 trust owned the property . . . . right?

"[Plaintiff]: Yes.

"[Defendant's Counsel]: In fact, in 1991, during the marriage, you went to your brother, Merrill Magowan, and asked him to invade the principal, your terms, because you said you couldn't invade it, but you went to him and you said I want to build a house on this property, right, or I want to buy the property?

"[Plaintiff]: Yes."

[7] General Statutes § 46b-81 provides in relevant part: "(a) At the time of entering a decree annulling or dissolving a marriage or for legal separation . . . the Superior Court may assign to either the husband or wife all or any part of the estate of the other. The court may pass title to real property to either party or to a third person or may order the sale of such real property, without any act by either the husband or the wife, when in the judgment of the court it is the proper mode to carry the decree into effect.

"(b) A conveyance made pursuant to the decree shall vest title in the

Conn. 733, 761–62, 785 A.2d 197 (2001). Dispositions of property made at the time of the decree under § 46b-81 are not subject to modification, even if there should be a change of circumstances. See General Statutes § 46b-86 (a);[8] see also *Viglione* v. *Viglione,* 171 Conn. 213, 215, 368 A.2d 202 (1976) ("[a]limony consisting of a specific portion of an estate or of a specific sum of money, however, is a final judgment which the court cannot modify even should there be a change of circumstances").

The court ruled that the plaintiff was seeking to open the judgment due to a postjudgment change in circumstances, and it did not act unreasonably or abuse its discretion when it denied the plaintiff's motion to open the judgment.

The judgment is affirmed.

---

purchaser, and shall bind all persons entitled to life estates and remainder interests in the same manner as a sale ordered by the court . . . ."

[8] General Statutes § 46b-86 (a) provides in relevant part: "Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support or an order for alimony or support pendente lite may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party . . . . This section shall not apply to assignments under section 46b-81 or to any assignment of the estate or a portion thereof of one party to the other party under prior law. . . ."