## MARIO S. ROSATO *v.* BEATRICE M. ROSATO
### (AC 22951)

Foti, Bishop and Hennessy, Js.

Argued March 19—officially released May 27, 2003

*Mark M. Wrenn*, for the appellant (plaintiff).

*Beatrice M. Rosato*, pro se, the appellee (defendant).

Opinion

BISHOP, J. In this marital dissolution action, the plaintiff, Mario S. Rosato, appeals from the court's judgment (1) concerning the payment of an arrearage on the distribution of his retirement pension to the defendant, Beatrice M. Rosato, and (2) concerning the order that the defendant's share of his pension pass to the parties' adult children upon the death of the defendant. We affirm the judgment of the trial court in part and reverse it in part.

This case has followed several paths since the marital dissolution judgment was rendered on July 11, 1988. In 1994, the defendant filed a motion to clarify a portion of the judgment concerning the plaintiff's pension. At issue in that motion was whether the court initially had awarded the defendant only a survivorship interest in the plaintiff's pension or had awarded her a portion of the plaintiff's pension to be received during her lifetime. In response to the motion, the court issued an order purportedly clarifying the initial judgment by making explicit its intention that the defendant receive a fixed portion of the plaintiff's pension during her lifetime. In 1996, the court's "clarification" was, in turn, found by this court to be an improper modification of a property assignment. See *Rosato* v. *Rosato*, 40 Conn. App. 533, 536, 671 A.2d 838 (1996).

Following our decision, the defendant attempted to secure payment of pension benefits derived from the plaintiff's pension through the federal Office of Personnel Management (OPM). Unsuccessful in that administrative process, the defendant appealed to the United States Court of Appeals for the Federal Circuit, which, in 1997, reversed the ruling of the administrative law judge. See *Rosato* v. *Office of Personnel Management*, 132 F.3d 55 (Fed. Cir. 1997). Thereafter, however, the

federal court reversed itself due to a procedural infirmity regarding its initial determination. *Rosato* v. *Office of Personnel Management*, 165 F.3d 1377 (Fed. Cir. 1999). In that later decision, the federal court urged the defendant to request that we reconsider our decision, which, the federal court found stood as an impediment to the defendant's receipt of a portion of the plaintiff's pension. Id., 1381–82.

On the basis of the Federal Circuit's decision, the defendant petitioned us to reconsider our earlier decision. We, in response, dismissed the defendant's motion as untimely. *Rosato* v. *Rosato*, 53 Conn. App. 387, 389, 731 A.2d 323 (1999). Thereafter, to pursue a state appellate remedy, the defendant filed in our Supreme Court a motion for permission to file a late petition for certification to appeal from our initial decision. That petition was granted in 2000. *Rosato* v. *Rosato*, 252 Conn. 930, 746 A.2d 793 (2000). Consequently, the Supreme Court reversed our 1996 decision and directed us to remand the matter to the trial court for a new hearing on the financial orders. *Rosato* v. *Rosato*, 255 Conn. 412, 425, 766 A.2d 429 (2001). In doing so, the court opined:

"It is clear to us that without the benefit of a definite resolution of the questions surrounding all the relevant pension information, we cannot be absolutely certain whether the Appellate Court correctly concluded that the trial court improperly had modified its original award order. Keeping in mind that we ultimately are charged with the responsibility of doing justice in the extraordinary circumstances of this case, we conclude that: (1) we cannot determine with certainty whether the trial court's original order granted the defendant an interest in the plaintiff's lifetime pension, or only a survivorship interest upon the plaintiff's death; (2) we cannot reconcile clearly whether the clarification order by the trial court was intended to award 55 percent of the plaintiff's lifetime pension benefits or survivorship

rights; (3) the trial court should determine whether the plaintiff's pension benefits vested, and if they did vest, when did they vest; (4) we must set aside the Appellate Court's judgment because its interpretation of the trial court's order may well be flawed; and (5) for us to resolve all of the preceding issues might well cast us, to a great degree, in the role of a fact finder.

"Thus, for the reasons set forth in this opinion, we find it necessary to reverse the judgment of the Appellate Court and remand the case for a new hearing to establish a new set of comprehensive financial orders, including a new alimony award. We recognize that this unique case provides very little precedential value, and we hope not to see another of its kind again. Finally, given the longevity of these proceedings and with recognition of the patience of the parties involved, we strongly urge that this matter be given an expeditious reassignment for rehearing." Id., 424–25.

Thereafter, on August 27, 2001, the trial court, *Hon. Sidney Axelrod*, judge trial referee, conducted a further hearing and entered new financial orders effective as of July 11, 1988. Included in that judgment are the court's orders concerning a distribution to the defendant of a portion of the plaintiff's pension effective as of July 11, 1988.[1] Although the plaintiff does not challenge the assignment to the defendant of a fixed portion of his pension during her lifetime, he claims that the court incorrectly found an arrearage of $81,074.20 on the distribution and claims that the court's order that this arrearage be discharged by equal monthly payments of $675.62 over a ten year period was an abuse of discretion. Additionally, he claims that the court's order that the defendant's share of his pension be assigned to the

---

[1] The court subsequently revised that judgment on March 26, 2002, to state with exactitude the amount of the pension arrearage and monthly payments due on it. For purposes of clarity and accuracy, we refer to the date of the judgment on remand as August 27, 2001.

parties' adult children upon her death was legally impermissible.

Each of the plaintiff's two claims implicates a different standard of review. As to the finding of an arrearage on the pension payments and the court's orders for monthly payments on that arrearage, we review the court's order to determine whether it constitutes an abuse of discretion. "The standard of review in family matters is that this court will not disturb the trial court's orders unless it has abused its legal discretion or its findings have no reasonable basis in fact. . . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . [E]very reasonable presumption will be given in favor of the trial court's ruling, and [n]othing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference." (Citation omitted; internal quotation marks omitted.) *Bleuer* v. *Bleuer*, 59 Conn. App. 167, 169, 755 A.2d 946 (2000); see also *Parley* v. *Parley*, 72 Conn. App. 742, 751–52, 807 A.2d 982 (2002). "In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." (Internal quotation marks omitted.) *Sands* v. *Sands*, 188 Conn. 98, 101, 448 A.2d 822 (1982), cert. denied, 459 U.S. 1148, 103 S. Ct. 792, 74 L. Ed. 2d 997 (1983). Accordingly, it is only in rare instances that the court's decision will be disturbed. See *Simmons* v. *Simmons*, 244 Conn. 158, 175, 708 A.2d 949 (1998); *Milbauer* v. *Milbauer*, 54 Conn. App. 304, 320, 733 A.2d 907 (1999).

Here, the plaintiff does not claim that the court's award to the defendant of a fixed portion of his pension constituted an abuse of discretion. He also does not claim that the court was incorrect to value the parties' assets as of July 11, 1988, the original date of the marital dissolution. See *Sunbury* v. *Sunbury*, 216 Conn. 673,

676, 583 A.2d 636 (1990). Rather, the plaintiff claims that the court abused its discretion in dividing the pension as of July 11, 1988, and thereby finding that an arrearage had accrued between the date of the original hearing and the hearing on remand. The plaintiff claims, as well, that the court abused its discretion in its order for monthly payments.

As to the finding of an arrearage, at the hearing on remand, the court heard evidence concerning the date on which the plaintiff's pension became vested, his date of retirement and the gross amount of pension payments he had received between August, 1988, and the date of the hearing on remand. On the basis of that information, and in light of the court's order that the defendant receive 50 percent of the plaintiff's pension, the court calculated the total amount the defendant should have received if she had been receiving payments equal to 50 percent of the pension since the date of the original hearing in 1988. From that sum, the court credited the plaintiff with the amounts the defendant had, in fact, received during that time period to arrive at an adjusted arrearage figure of $81,074.20.

In assessing the correctness of that order, we are mindful that a distribution of pension in conjunction with a marital dissolution is part of a property distribution. *Bender* v. *Bender*, 258 Conn. 733, 750, 785 A.2d 197 (2001); *Krafick* v. *Krafick*, 234 Conn. 783, 792–94, 663 A.2d 365 (1995). That observation is significant because the assignment of property may only be made at the time of the marital dissolution and it is not thereafter subject to modification as are periodic orders. See General Statutes § 46b-81. "Dispositions of property made at the time of the decree under § 46b-81 are not subject to modification, even if there should be a change of circumstances. See General Statutes § 46b-86 (a) . . . ." (Citation omitted.) *Magowan* v. *Magowan*, 73

Conn. App. 733, 742, 812 A.2d 30 (2002), cert. denied, 262 Conn. 934, 815 A.2d 134 (2003).

As the parties agree, under the unusual circumstances of this case, it was the task of the court on remand to issue financial orders as of 1988, the original date of the marital dissolution hearing. In rendering its pension order, therefore, the court divided the pension as of that date. As an asset, however, the pension is distributed not in one payment, but in a series of monthly payments, several of which were made subsequent to 1988 and before the August, 2001 hearing. Thus, for the defendant to realize the full benefit of the 2001 order, issued as of 1988, that she receive 50 percent of the plaintiff's pension, it was proper for the court to calculate the total pension amount received by the plaintiff between the first hearing and the remand hearing, to determine one half of that amount as the defendant's entitlement and, finally, to give the plaintiff credit for any pension amounts actually received by the defendant during that time period.

If the court had not determined an amount due to the defendant from the effect of the 1988 order, but simply had ordered payments prospectively from 2001, the court would have been in violation of § 46b-81, which requires that property orders be made at the time of the marital dissolution. Section 46b-81 (a) provides in relevant part: "At the time of entering a decree . . . dissolving a marriage . . . the Superior Court may assign to either the husband or wife all or any part of the estate of the other. . . ." In sum, assignments of property may be made only at the time of the marital dissolution hearing. Under the unusual circumstances of this case, the court's methodology of determining the full value of the defendant's awarded share of the plaintiff's pension, the amount of that paid out between 1988 and 2001, and the shortfall consequently due to

the defendant was reasonable and correct in light of its obligation to value assets as of 1988.

The plaintiff next claims that even if the court's finding of an arrearage was correct, its order for monthly payments over a ten year period to the defendant was an abuse of discretion. We are not persuaded. The following additional facts are relevant to the plaintiff's claim.

At the time of the original hearing in 1988, the plaintiff was employed by the United States Postal Service with a vested right to the future receipt of a defined benefit pension. In 1992, the plaintiff, then age sixty-two, retired and began to receive monthly lifetime pension benefits pursuant to the federal Civil Service Retirement System. On remand, the court ordered that the defendant receive 50 percent of the plaintiff's gross monthly annuity. Additionally, as noted, the court considered that for the time period 1988 to 2001, because the defendant had received some portion of the plaintiff's pension, the plaintiff should receive a credit for the amounts received by the defendant. Therefore, the difference between the amount credited and the amount equal to 50 percent of the gross payments between 1988 and 2001, less any payments made to the defendant, constituted an arrearage fairly due to the defendant. Consequently, the court ordered the arrearage paid in equal monthly installments over a period of ten years.

The plaintiff, who is now seventy-two years old and fully retired, asserts that as a result of the arrearage order, he is left with approximately 25 percent of his pension as his monthly financial sustenance when the court's order is combined with the ongoing pension distribution order.[2] Although that argument is facially

[2] From the record, it appears that the plaintiff's monthly gross pension is approximately $2443, 50 percent of which is $1221.50. Additionally, the effect of the arrearage order is that the defendant is to receive an additional $675.62 a month for a period of ten years, leaving the plaintiff with a gross monthly receipt of $545.88 a month.

compelling, we find no less compelling the fact that the amount of the arrearage represents a sum the court found the defendant did not have the benefit of receiving between the years 1988 and 2001. "In view of the court's distinct advantage in handling domestic relations matters, awards of financial settlement ancillary to a marital dissolution are within the sound discretion of the trial court acting in accordance with the standards and guidelines provided in the General Statutes. *Murphy* v. *Murphy*, 180 Conn. 376, [379] 429 A.2d 897 [1980]; *Fucci* v. *Fucci*, 179 Conn. 174, [181] 425 A.2d 592 [1979]; *Ridolfi* v. *Ridolfi*, 178 Conn. 377, [379] 423 A.2d 85 [1979]; *Jacobsen* v. *Jacobsen*, 177 Conn. 259, [263] 413 A.2d 854 [1979]. In determining whether the trial court abused its discretion 'the ultimate issue is whether the court could reasonably conclude as it did.' *Grinold* v. *Grinold*, 172 Conn. 192, 194, 374 A.2d 172 [1976]; *Corbin* v. *Corbin*, 179 Conn. 622, [624] 427 A.2d 432 [1980]." *Miller* v. *Miller*, 181 Conn. 610, 611, 436 A.2d 279 (1980). We are not persuaded that the court's order for payment on the arrearage was unreasonable.

The plaintiff next claims that the court incorrectly ordered that the defendant's share of the plaintiff's monthly pension be assigned to the parties' children upon the defendant's death. The court's order in relevant part was as follows: "If [the defendant] dies before [the plaintiff], the United States Office of Personnel Management is directed to pay [the defendant's] share of [the plaintiff's] Civil Service Retirement Benefits to surviving children of the marriage including any adopted children, in equal shares. Upon the deaths of any child, that child's share will be distributed amongst the other surviving children." We agree with the plaintiff's claim that this was a legally impermissible order.

Because the plaintiff challenges the legal authority of the court to issue the order, his claim raises a question of law that is subject to our plenary review. See *In re*

*Jonathan M.*, 255 Conn. 208, 217, 764 A.2d 739 (2001); *Olson* v. *Accessory Controls & Equipment Corp.*, 254 Conn. 145, 156, 757 A.2d 14 (2000).

From the record, we glean the additional relevant fact that during the parties' marriage, four children were born, all of whom, by 1988, had reached the age of majority. We begin our analysis of the plaintiff's claim by recognizing that the authority of the court to transfer property incidental to a marital dissolution awards is statutory.

"The failure to interpret property broadly pursuant to § 46b-81 could result in substantial inequity . . . and would not be in keeping with the equitable nature of dissolution proceedings . . . ." *Lopiano* v. *Lopiano*, 247 Conn. 356, 371, 752 A.2d 1000 (1998). "Although it is well established that trial courts have broad equitable remedial powers regarding marital dissolutions . . . it is equally well settled that [c]ourts have no inherent power to transfer property from one spouse to another; instead, that power must rest upon an enabling statute. *Passamano* v. *Passamano*, 228 Conn. 85, 88 n.4, 634 A.2d 891 (1993). Thus, the court's authority to transfer property appurtenant to a dissolution proceeding requires an interpretation of the relevant statutes. Statutory construction, in turn, presents a question of law over which our review is plenary." (Citation omitted; internal quotation marks omitted.) *Smith* v. *Smith*, 249 Conn. 265, 272, 752 A.2d 1023 (1999); *Costa* v. *Costa*, 57 Conn. App. 165, 169–70, 752 A.2d 1106 (2000).

Section 46b-81 (a) provides: "At the time of entering a decree annulling or dissolving a marriage or for legal separation pursuant to a complaint under section 46b-45, the Superior Court may assign to either the husband or wife all or any part of the estate of the other. The court may pass title to real property to either party or to a third person or may order the sale of such real

property, without any act by either the husband or the wife, when in the judgment of the court it is the proper mode to carry the decree into effect." It is plain from that statute that while the court has the authority to pass title of real property from one spouse to another or to a third party at the time of marital dissolution, the court's authority to transfer any part of each spouse's estate is limited to transfers between spouses. It also is apparent that to the extent that the defendant's right to receive pension benefits during her lifetime can be said to be a part of her estate for purposes of § 46b-81, this estate is comprised in no part of real property.

The defendant claims, nevertheless, that the court has the authority to transfer her lifetime interest in the plaintiff's pension to the parties' children as a result of federal legislation. In that assertion, the defendant is mistaken. While it is true, as noted by the court, that § 838.237 of the Code of Federal Regulations provides that the United States Office of Personnel Management will honor an order to continue payments of a former spouse's share of a retirement annuity to a child or children of a retiree after the former spouse's death, this federal regulation does not serve to enlarge the trial court's statutory authority pursuant to § 46b-81.

Additionally, the defendant has not pointed to any federal authority that preempts our state law limiting the authority of the court to order a transfer of personal property from one spouse to another incidental to a marital dissolution. "There is indeed a presumption against pre-emption in areas of traditional state regulation such as family law. See, e.g., *Hisquierdo* v. *Hisquierdo*, 439 U.S. 572, 581 [99 S. Ct. 802, 59 L. Ed. 2d 1] (1979)." *Egelhoff* v. *Egelhoff*, 532 U.S. 141, 151, 121 S. Ct. 1322, 149 L. Ed. 2d 264 (2001).

We conclude, on the basis of state law, that the court was without the authority to direct the United States Office of Personnel Management to pay the defendant's share of the plaintiff's retirement benefits to the chil-

dren upon the death of the defendant should she predecease the plaintiff.

As a last matter, having determined that the court was incorrect in ordering the United States Office of Personnel Management to continue pension payments to the parties' children, we decline, on the basis of the particular circumstances of this case, to return this matter to the trial court for a hearing anew on all financial orders.

Normally, when a portion of the court's financial order is found to be flawed, we return the matter to the trial court for a new hearing on the ground that in marital dissolution jurisprudence, financial orders often are interwoven. "[I]ssues involving financial orders [in dissolution cases] are entirely interwoven. The rendering of judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other. . . . *Hopfer* v. *Hopfer*, 59 Conn. App. 452, 458–59, 757 A.2d 673 (2000)." (Internal quotation marks omitted.) *Parley* v. *Parley*, supra, 72 Conn. App. 754 (*Foti*, *J.*, dissenting). A remand, however, is not inevitable if we discern that a particular financial order is not so interwoven as to rend the entire fabric of a marital dissolution decision. As stated in *Parley*, "[o]ur Supreme Court . . . has stated that a financial order in a dissolution case is severable when it is not in any way interdependent with other orders and is not improperly based on a factor that is linked to other factors. *Smith* v. *Smith*, [supra, 249 Conn. 277]." (Internal quotation marks omitted.) *Parley* v. *Parley*, supra, 754. This is such a case.

The judgment is reversed only as to the order directing the United States Office of Personnel Management to designate the children as beneficiaries of the plaintiff's retirement plan upon the death of the defendant and the case is remanded with direction to render judgment as on file except as modified to delete that order.

In this opinion the other judges concurred.