JEWISH HOME FOR THE ELDERLY OF FAIRFIELD
COUNTY, INC. *v.* J. MICHAEL CANTORE, JR.,
CONSERVATOR (PERSON AND ESTATE
OF DIANE KOSMINER), ET AL.
(AC 25366)

Bishop, Harper and Lavine, Js.

Argued March 30—officially released July 4, 2006

*James J. Farrell*, for the appellant (defendant Continental Casualty Company).

*Elizabeth J. Stewart*, with whom was *Jennifer M. DelMonico*, for the appellee (plaintiff).

*Opinion*

BISHOP, J. The plaintiff, the Jewish Home for the Elderly of Fairfield County, Inc., brought this action on a probate bond pursuant to General Statutes (Rev. to 1995) § 45a-144 (a) against the defendants, J. Michael Cantore, Jr., conservator of the person and estate of Diana Kosminer, and Continental Casualty Company (Continental), the surety on the bond. After a jury trial,

the verdict was returned in favor of the plaintiff, and Continental appealed. On appeal, Continental claims that (1) the trial court improperly determined that the plaintiff's claim was not barred by the doctrine of res judicata and (2) the jury improperly calculated the damages.[1] We affirm the judgment of the trial court.

The following procedural and factual background is germane to our resolution of the issues on appeal. Kosminer was a patient of the plaintiff, a state licensed nursing home. On June 8, 1987, the Stamford Probate Court appointed Cantore as conservator of the person and estate of Kosminer. Pursuant to General Statutes (Rev. to 1995) § 45a-139,[2] Cantore executed and filed with the court a probate bond in the amount of $50,000, naming himself as principal and Continental as surety. The bond provided that it was conditioned, as required by § 45a-139, on Cantore's "faithfully perform[ing] the duties of his trust and administer[ing] and account[ing] for all monies and other property coming into his hands, as fiduciary, according to law. . . ."

On August 29, 1989, upon Cantore's request, Kosminer was admitted to the plaintiff's facility as a "private, self-pay" resident, where she remained until her death in 1995. At the time of Kosminer's admittance, her estate had assets of approximately $160,000. Despite the ample resources of the estate, Cantore failed to make

---

[1] Continental also argues that the court improperly admitted approximately sixty-five exhibits that should have been excluded on the basis of the parol evidence rule. Because Continental does not indicate specifically which exhibits should not have been admitted, and has provided no analysis or citation of authorities in support of this claim, we decline to address it. See *Lawton* v. *Weiner*, 91 Conn. App. 698, 720, 882 A.2d 151 (2005).

[2] General Statutes (Rev. to 1995) § 45a-139 (a) provides: "As used in this title, except as otherwise provided, 'bond' or 'probate bond' means a bond with security given to secure the faithful performance by an appointed fiduciary of the duties of his trust and the administration of and accounting for all moneys and other property coming into his hands, as fiduciary, according to law."

timely payment to the plaintiff for the care and services provided to Kosminer. Instead, on May 2, 1990, more than eight months after Kosminer had been admitted to the plaintiff's facility, Cantore made an initial application on Kosminer's behalf to the department of income maintenance (department) for title XIX (medicaid) assistance, which, if Kosminer had been eligible, would have paid for the cost of her care. This application was denied on the ground that Cantore had failed to provide the department with information to verify that Kosminer's assets did not exceed $1600, the maximum amount permitted for medicaid eligibility.[3]

By complaint dated May 31, 1991, the plaintiff brought an action (collection action) against Cantore, as conservator, for failing to pay Kosminer's expenses, in violation of the contract entered into by the plaintiff and Cantore on Kosminer's behalf. Approximately one and one-half years after the initial medicaid application was denied, and more than two years after Kosminer had entered the plaintiff's facility, Cantore applied for medicaid benefits on Kosminer's behalf for a second time. Again, Cantore failed to provide the department with the necessary asset information, and this second application was also denied. On January 15, 1992, Cantore attempted for a third time to qualify Kosminer for medicaid benefits, but this application was denied on the ground that the assets in Kosminer's estate exceeded the $1600 maximum eligibility requirement. At the time of this third application, the plaintiff had provided care and services to Kosminer for nearly two and one-half years despite Cantore's continuous failure to make or to ensure payment for those services. Cantore finally liquidated Kosminer's assets to less than $1600 on June

---

[3] General Statutes § 17b-80 (c) provides in relevant part: "No person shall be eligible for the state supplement program whose assets as defined by the commissioner exceed sixteen hundred dollars . . . ."

20, 1992, and his fourth application for medicaid benefits of July 17, 1992, was granted by the department, retroactive to June 1, 1992. Although the liquidation of the estate included a payment to the plaintiff, an unpaid balance of $63,000 remained for the care and services Kosminer received from August 29, 1989, when she was admitted to the plaintiff's facility, to June 1, 1992, the date on which the medicaid benefits began to cover the cost of her care.

On April 13, 1993, Cantore and the plaintiff entered into a stipulated judgment in the collection action in favor of the plaintiff in the amount of $87,597.37, the amount of Kosminer's outstanding debt to the plaintiff at that time. As a result of certain payments of applied income[4] after the entry of the stipulated judgment and before Kosminer died in 1995, the debt to the plaintiff was eventually reduced to $49,679.47.

Kosminer's applied income and social security payments ceased at the time of her death in 1995. The plaintiff requested the Probate Court's consent to bring an action pursuant to § 45a-144[5] on the basis that Cant-

---

[4] Applied income is the amount of income nursing home patients must pay each month toward the cost of their care. Regs., Conn. State Agencies § 17b-262-702 (1).

[5] Pursuant to General Statutes (Rev. to 1995) § 45a-144 (a), the revision of the statute that was in effect at the time of the relevant proceedings in this case, a person claiming to be aggrieved by the breach of a probate bond could "bring an action to recover for the breach," as long as the person first obtained consent to do so from the Probate Court that issued the bond. Pursuant to this statutory requirement, the plaintiff requested permission from the Probate Court for the district of Stamford before bringing the present action on the probate bond in the Superior Court. The Probate Court, pursuant to its general powers delineated in General Statutes § 45a-98, issued an order dated August 21, 1995, granting the plaintiff the necessary authorization to bring the action. Section 45a-144 was amended by Public Acts 1998, No. 98-52, § 8, which repealed this consent requirement and added the option of applying to the Probate Court to recover for the breach of a probate bond. As a result, the current revision of the statute provides in relevant part: "Any person claiming to be aggrieved by the breach of a probate bond . . . may bring an action in the Superior Court or may apply to the court of probate in which the bond was given to recover for the

ore failed to discharge his duties as conservator faithfully in breach of the $50,000 probate bond. The Probate Court granted the plaintiff's request for permission to bring this action in which the plaintiff alleged that Cantore had a duty as Kosminer's conservator to use the assets of her estate to pay for the care and services she had received from the plaintiff. In addition, it alleged that Cantore had a duty to apply promptly for medicaid assistance when the estate's assets approached the $1600 medicaid eligibility mark. The plaintiff alleged further that Cantore's failure to pay for Kosminer's care, first from the assets of the estate and then through medicaid once those assets were depleted, constituted a breach of his fiduciary duty as conservator of Kosminer's estate and person. Finally, the plaintiff alleged that Cantore's breach of these duties gave it the right under § 45a-144 (a) to bring an action on the probate bond against Cantore, as the principal on the bond, and Continental, as surety.

On the first day of trial in this matter, prior to the commencement of evidence, the court dismissed the claim against Cantore, finding that the stipulated judgment in the collection action barred the plaintiff's present claim against Cantore under the doctrine of res judicata.[6] The plaintiff's claim against Continental was tried to the jury, which found that Cantore had violated the terms of the probate bond in failing to perform his duties as conservator of the person and estate of Kosminer faithfully and awarded damages in the

breach . . . ." General Statutes § 45a-144 (a). References herein are to the 1995 revision of § 45a-144 (a).

[6] Both defendants previously had moved for summary judgment claiming that the plaintiff's claims were barred by res judicata on the basis of the stipulated judgment in the collection action. Finding that an issue of material fact existed as to whether a final judgment was entered in the collection action, the court denied the motion for summary judgment.

amount of $31,000.[7] The court denied Continental's motion to set aside the verdict. This appeal followed.

I

Continental first claims that the plaintiff's action is barred by the doctrine of res judicata because the stipulated judgment entered in the collection action was a final judgment as to the debt owed by Kosminer. We disagree.

"The doctrine of res judicata holds that an existing final judgment rendered upon the merits without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and of facts or issues thereby litigated as to the parties . . . in all other actions in the same or any other judicial tribunal of concurrent jurisdiction. . . . If the same cause of action is again sued on, the judgment is a bar with respect to any claims relating to the cause of action which were actually made or which might have been made. . . . To determine whether two claims are the same for purposes of res judicata, we compare the pleadings and judgment in the first action with the complaint in the subsequent action. . . . The judicial [doctrine] of res judicata . . . [is] based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate. . . . [W]here a party has fully and fairly litigated his claims, he may be barred from future actions on matters not raised in the prior proceeding." (Citation omitted; internal quotation marks omitted.) *Trinity United Methodist Church of Springfield, Massachusetts* v. *Levesque*, 88 Conn. App. 661, 671–72, 870 A.2d 1116, cert. denied, 274 Conn. 907, 908, 876 A.2d 1200 (2005). "An issue is actually litigated if it is properly

---

[7] The court also awarded prejudgment interest pursuant to General Statutes § 37-3a in the amount of $26,167.40, offer of judgment interest of $2462.34 and offer of judgment counsel fees of $350.

raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . 1 Restatement (Second), Judgments § 27, comment (d) (1982). An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered. F. James & G. Hazard, Civil Procedure (3d Ed. 1985) § 11.19." (Internal quotation marks omitted.) *Efthimiou* v. *Smith*, 268 Conn. 499, 507, 846 A.2d 222 (2004). "The applicability of res judicata . . . raises a question of law, and is, therefore, subject to our plenary review." (Internal quotation marks omitted.) *Cahaly* v. *Somers*, 89 Conn. App. 816, 819, 877 A.2d 837, cert. denied, 275 Conn. 910, 882 A.2d 669 (2005).

Here, although both actions sought to collect the debt owed by Kosminer, the claims raised in the present action differ fundamentally from those raised in the collection action. The collection action was a simple breach of contract claim seeking payment for services rendered, having nothing to do with the nature of Cantore's duties, or his performance, as conservator. Cantore and Continental were not in privity for purposes of the collection action because Continental was not a party to that contract and, thus, Continental was not a party to the collection action. The collection action did not implicate in any way the probate bond on which Cantore was the principal and Continental, the surety. The collection action contained no allegation that Cantore breached his fiduciary duties by failing to pay Kosminer's bills or by failing to qualify Kosminer for medicaid benefits in a timely manner. Nor did the collection action contain any allegation that Cantore breached the probate bond. Accordingly, we conclude that the claims in the present action were not litigated in the collection action and, therefore, are not barred by the doctrine of res judicata.

## II

Continental next claims that the jury improperly calculated the damages. We are not persuaded.

"[T]he trial court has broad discretion in determining whether damages are appropriate. . . . Its decision will not be disturbed on appeal absent a clear abuse of discretion." (Internal quotation marks omitted.) *Lyons* v. *Nichols*, 63 Conn. App. 761, 767, 778 A.2d 246, cert. denied, 258 Conn. 906, 782 A.2d 1244 (2001).

In this case, the plaintiff introduced evidence that Kosminer's debt was $49,679.47. The amount of the debt was based on the private pay rate charged by the plaintiff until Cantore qualified Kosminer for medicaid in June, 1992. Continental did not introduce any evidence to contradict the amount of the debt, but claimed in its closing argument that the jury should award the plaintiff damages only for the amount the plaintiff would have received under the medicaid rate that would have applied if Cantore had qualified Kosminer for medicaid in a timely manner rather than under the private pay rate actually charged by the plaintiff until Kosminer was on medicaid. In making this argument, Continental's counsel reminded the jury that at the time of trial, the medicaid rate was roughly 54 percent of the private pay rate and urged the jury to award damages of 54 percent of the debt claimed by the plaintiff, which he calculated to be approximately $27,000. The jury awarded damages in the amount of $31,000, apparently following Continental's suggestion to apply the medicaid rate starting when Kosminer's assets would have run out if Cantore had properly and timely spent them down.

Continental now argues that the jury should have applied the medicaid rate to the entire time period from October, 1989, when Cantore stopped paying the bills, to June, 1992, when he finally qualified Kosminer for

medicaid. It is axiomatic that it is not the function of this court to find facts. See *Seymour* v. *Region One Board of Education*, 274 Conn. 92, 105, 874 A.2d 742, cert. denied, 546 U.S. 1016, 126 S. Ct. 659, 163 L. Ed. 2d 526 (2005). Because the determination of when to apply the medicaid rate was squarely within the province of the jury, the court did not abuse its discretion in accepting the verdict.

The judgment is affirmed.

In this opinion the other judges concurred.