# LAURI J. LISTENES *v.* ALAN LISTENES, JR.
## (AC 27383)

Flynn, C. J., and Schaller and DiPentima, Js.

Argued February 13—officially released July 24, 2007

*Hugh D. Hughes*, with whom, on the brief, was *William F. Gallagher*, for the appellant (defendant).

*Robert M. Fleischer*, for the appellee (plaintiff).

*Opinion*

SCHALLER, J. The defendant, Alan Listenes, Jr., appeals from the postdissolution judgment of the trial court awarding a dependency exemption for income tax purposes to the plaintiff, Lauri J. Listenes, for certain years. On appeal, the defendant claims that the court improperly (1) concluded that the issue of the tax exemption was not barred by res judicata and (2) found that he was in arrears with respect to his court-ordered child support. We affirm the judgment of the trial court.

The following factual and procedural history is relevant to our resolution of the defendant's appeal. The parties were married on October 21, 1988, and have one minor child. On September 16, 1997, the court dissolved the marriage and awarded custody of the minor child to the plaintiff. The defendant was ordered to pay alimony, for a period of three years, and child support in the amount of $95 per week. The court further found the defendant in arrears in the amount of $1640 with respect to the prior pendente lite orders and ordered that he pay $20 per week until the debt was repaid. Finally, the court entered the following order: "The defendant shall be entitled to claim the minor child as a dependent for income tax purposes provided he is current with the child support payments as of December 31. This provision shall be modifiable."

Commencing on November 20, 1997, the plaintiff filed many motions for contempt, alleging that the defendant had failed to pay alimony, child support, the arrearage

or medical expenses of the child.[1] On September 28, 1998, the court accepted the parties' written agreement that terminated the defendant's alimony obligation and changed the terms of the child support obligation. The defendant agreed to pay the plaintiff $106 per week, plus 25 percent of his net overtime pay and any subsequent pay increases, and 20 percent of any "side income" that he received. They further agreed that the defendant was in arrears with respect to the child's medical expenses, and alimony and child support.

After the agreement, the plaintiff continued to file motions for contempt, again alleging that the defendant had failed to pay his support obligation. In a motion dated April 12, 2001, the plaintiff claimed that the defendant improperly had claimed the minor child as a dependent for income tax purposes. On April 30, 2001, the parties reached a second agreement. Child support was increased to $171 per week, and the defendant acknowledged an arrearage of $1040 for 2000 and $506.50 for 2001.

Starting in January, 2002, the plaintiff filed several motions for contempt, alleging that the defendant failed to pay the proper amount of child support and that he improperly had claimed the minor child as a dependent. On August 13, 2002, the court awarded the dependency exemption to the plaintiff for 2002 and, once again, found the defendant to be in arrears.

On November 17, 2005, the plaintiff filed a motion for modification, seeking an increase in child support. On the same date, the plaintiff also filed a motion for contempt, claiming simply that "more money is owe[d]." On December 19, 2005, the parties entered

---

[1] We note that in our review of the record, we also have discovered at least four motions for contempt filed by the plaintiff prior to the dissolution of the marriage, alleging that the defendant had failed to pay alimony and child support.

into another written agreement. The defendant agreed to pay the plaintiff $142 per week, and, in order to settle the dispute regarding arrearages, the sum of $954.55 in four equal payments. The parties each expressly reserved the right to claim the child as a dependent for federal income tax purposes with respect to the 2000, 2001, 2003 and 2004 tax years.[2] Additionally, the defendant agreed that commencing with the 2005 tax year, the plaintiff and her current spouse were entitled to claim the child as a dependent for tax purposes. Finally, the agreement specified that the defendant no longer was obligated to pay the plaintiff 25 percent of his overtime pay or 20 percent of his "side income."

On January 3, 2006, the court held an evidentiary hearing with respect to the conflicting claims of the dependency exemption for the 2000, 2001, 2003 and 2004 tax years and concerning whether the defendant was in contempt for claiming the minor child as a dependent during those years. On January 5, 2006, the court issued its memorandum of decision. The court determined that the defendant had been found to be in arrears in 2000 and 2001 and therefore was not eligible to take the tax exemption for those years. The court further found that on the basis of the defendant's testimony that he was in arrears since 2003, he was not eligible to take the tax exemption for 2003 and 2004. Accordingly, the court awarded the tax exemption for the minor child for the tax years 2000, 2001, 2003 and 2004 to the plaintiff. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly concluded that the issue of the tax exemption was not

[2] Both parties had claimed the child as a dependent on their respective, separately filed tax returns for 2000, 2001, 2003 and 2004.

barred by res judicata.[3] Specifically, he argues that the plaintiff, on multiple prior occasions, had asserted her claim regarding the tax dependency exemption for the 2000 and 2001 tax years. He argues that because the court expressly awarded the plaintiff only the 2002 exemption, her claims relating to 2000 and 2001 were extinguished. We are not persuaded.

As a preliminary matter, we identify the applicable legal principles and standard of review that guide our resolution of the defendant's claim. "The doctrine of res judicata holds that an existing final judgment rendered upon the merits without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and of facts or issues thereby litigated as to the parties . . . in all other actions in the same or any other judicial tribunal of concurrent jurisdiction. . . . If the same cause of action is again sued on, the judgment is a bar with respect to any claims relating to the cause of action which were actually made or which might have been made. . . . The judicial [doctrine] of res judicata . . . [is] based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate. . . . [W]here a party has fully and fairly litigated his claims, he may be barred from future actions on matters not raised in the prior proceeding." (Internal quotation marks omitted.) *Jewish Home for the Elderly of Fairfield County,*

---

[3] We note that the court's January 5, 2006 memorandum of decision did not address the defendant's claim of res judicata. On January 25, 2006, the defendant filed a motion to reargue and requested that the court reconsider his claim of res judicata. The court denied that motion to reargue.

In his appellate brief, the defendant concedes that he did not seek an articulation, pursuant to Practice Book § 66-5, of the court's order. The defendant, citing to *Ammirata* v. *Zoning Board of Appeals*, 264 Conn. 737, 743–46, 826 A.2d 170 (2003), argues that an articulation is not essential to appellate review of a res judicata argument when the facts are not in dispute. We agree that, in the present case, the record is adequate for our review despite the trial court's silence with respect to the issue of res judicata.

*Inc.* v. *Cantore,* 96 Conn. App. 326, 332, 901 A.2d 49 (2006); see also *LaSalla* v. *Doctor's Associates, Inc.,* 278 Conn. 578, 589–90, 898 A.2d 803 (2006). "The issue of whether the doctrine of res judicata is applicable to the facts of the present case is a question of law. Accordingly, our review is plenary." *Gaynor* v. *Payne,* 261 Conn. 585, 595, 804 A.2d 170 (2002); *Jewish Home for the Elderly of Fairfield County, Inc.* v. *Cantor,* supra, 333.

The following additional facts are necessary. On April 12, 2001, the plaintiff filed a motion for contempt, alleging that the defendant had disobeyed a prior court order by failing to follow the parties' visitation schedule, failing to pay her 25 percent of his overtime and 20 percent of his side work income and claiming the minor child as a dependent for tax purposes despite being in arrears. The parties subsequently entered into an agreement that stated, inter alia, that the defendant "owes arrearages of [$]506.50 (2001) and [$]1040.00 (2000) . . . ." The issue of the exemption was not mentioned in this order.

On January 14, 2002, the plaintiff filed another motion for contempt, again alleging that the defendant had not followed the visitation schedule, had failed to pay her 25 percent of his net overtime and 20 percent of his side work income and had claimed the minor child as a dependent despite consistently being in arrears. The court held a hearing on this motion on February 4, 2002.[4] The court found that the defendant was in arrears but not in contempt.

---

[4] During the hearing, counsel for the defendant stated: "In the memorandum of decision, which is dated September 15, 1997, on page six, under miscellaneous, number two, it states that the defendant shall be entitled to claim the minor child as a dependent for income tax purposes, provided he is current with the child support payments as of December 31. This provision shall be modifiable. To my knowledge, there isn't any other order in the file. And quite frankly . . . when I read this provision, it didn't seem to be entirely clear to me, whether it meant as of December 31, 1997, the year of the decree, or whether it meant any subsequent year thereafter; if he was in arrearage as of December 31. So, that might be a motion for a

The plaintiff filed similar motions for contempt on March 28,[5] April 29[6] and July 3, 2002. On August 13, 2002, the court held a hearing on the July 3, 2002 motion and awarded the 2002 exemption to the plaintiff. The issues of the 2000 and 2001 exemptions were not addressed in the court's order.

We note that "[a] judgment may be final in a res judicata sense as to a part of an action although litigation continues as to the rest. . . . Thus, res judicata may operate to preclude a claim decided in a previous proceeding within the same case. . . . [F]or purposes of res judicata, a judgment will ordinarily be considered final if it is not tentative, provisional, or contingent and represents the completion of all steps in the adjudication of the claim by the court, short of any steps by

clarification on a later day, but I would just like to know if [the plaintiff] is pursuing that matter today." The plaintiff responded: "That's not what I'm here for."

To the extent that the defendant suggests that this colloquy amounts to a waiver by the plaintiff of her claim regarding the tax exemption, and thereby extinguished it by the application of res judicata to a claim that could have been brought, we are not persuaded. "Waiver involves an intentional relinquishment of a known right. . . . There cannot be a finding of waiver unless the party has both knowledge of the existence of the right and intention to relinquish it. . . . Waiver may be inferred from the circumstances if it is reasonable so to do. . . . Whether conduct constitutes a waiver is a question of fact. . . . The issue of waiver is a question of fact, dependent on all of the surrounding circumstances and the testimony of the parties." (Citation omitted; internal quotation marks omitted.) *Roy* v. *Metropolitan Property & Casualty Ins. Co.*, 98 Conn. App. 528, 532, 909 A.2d 980 (2006).

There was no finding of waiver by the trial court in the present case. It is axiomatic that appellate courts do not engage in fact-finding. See *State* v. *Nowell*, 262 Conn. 686, 695–96, 817 A.2d 76 (2003); *Pulaski* v. *Ledwith*, 5 Conn. App. 629, 631, 501 A.2d 396 (1985), cert. denied, 198 Conn. 803, 503 A.2d 1186 (1986).

[5] This motion resulted in a stipulated agreement approved by the court on April 8, 2002. This agreement did not mention the issue of the dependency exemption.

[6] This motion was marked off by agreement of the parties to provide the pro se plaintiff with an opportunity to obtain counsel.

way of execution or enforcement that may be consequent upon the particular kind of adjudication." (Citations omitted; internal quotation marks omitted.) *Honan* v. *Dimyan*, 63 Conn. App. 702, 707–708, 778 A.2d 989, cert. denied, 258 Conn. 942, 786 A.2d 430 (2001); see also *CFM of Connecticut, Inc.* v. *Chowdhury*, 239 Conn. 375, 397, 685 A.2d 1108 (1996), overruled in part on other grounds by *State* v. *Salmon*, 250 Conn. 147, 154–55, 735 A.2d 333 (1999) (en banc). Put another way, "[a]pplication of the doctrine of res judicata requires that there be a previous judgment on the merits." *Cayer Enterprises, Inc.* v. *DiMasi*, 84 Conn. App. 190, 193, 852 A.2d 758 (2004).

The defendant asks us to conclude that the court decided the issue of the 2000 and 2001 tax exemptions adversely to the plaintiff. Specifically, he argues that the April 30, 2001 agreement resolved all of the issues set forth in the plaintiff's April 12, 2001 motion for contempt. Because the court did not expressly award the 2000 exemption to the plaintiff at that time, or in any subsequent order or agreement, the defendant maintains that by operation of res judicata, the plaintiff's claims for the 2000 and 2001 exemptions were extinguished.

We do not agree with the defendant's interpretation of the court's orders. The court did not decide the issue of which party was entitled to the exemption for the 2000 and 2001 tax years. As our Supreme Court has noted, "[a]pplication of the doctrine of res judicata requires that there be a previous judgment on the merits. *Virgo* v. *Lyons*, 209 Conn. 497, 501, 551 A.2d 1243 (1988)." *Cayer Enterprises, Inc.* v. *DiMasi*, supra, 84 Conn. App. 193; see also *Zieger* v. *Village Brook Plaza Ltd. Partnership*, 224 Conn. 543, 545, 620 A.2d 109 (1993) ("It is axiomatic, however, that the application of the doctrine of res judicata requires the existence of a valid *final judgment*. See, e.g., *Beccia* v. *Waterbury*,

192 Conn. 127, 132, 470 A.2d 1202 (1984); *Wade's Dairy, Inc.* v. *Fairfield*, 181 Conn. 556, 559, 436 A.2d 24 (1980)." [Emphasis in original.]). The court never issued a valid final judgment for purposes of res judicata with respect to the tax exemption issue for 2000 and 2001. When no such judgment has been rendered, a claim is not barred by res judicata. See generally *Rathblott* v. *Rathblott*, 79 Conn. App. 812, 822, 832 A.2d 90 (2003).

In the present case, the plaintiff requested, by way of several motions for contempt, that the court determine which party was entitled to the tax exemption for 2000 and 2001. This issue, therefore, remained pending before the court. The court did not resolve this issue until it issued its memorandum of decision of January 5, 2006. We disagree, therefore, with the defendant's contention regarding the application of the doctrine of res judicata. We are mindful that "[t]he doctrines of preclusion, however, should be flexible and must give way when their mechanical application would frustrate other social policies based on values equally or more important than the convenience afforded by finality in legal controversies. . . . We review the doctrine of res judicata to emphasize that its purposes must inform the decision to foreclose future litigation. . . . [T]he scope of matters precluded necessarily depends on what has occurred in the former adjudication." (Internal quotation marks omitted.) *Cadle Co.* v. *Gabel*, 69 Conn. App. 279, 296, 794 A.2d 1029 (2002). We conclude that the plaintiff's claims regarding the 2000 and 2001 tax exemption were not barred by res judicata.

II

The defendant next claims that the court improperly found that he was in arrears with respect to his court-ordered child support. Specifically, the defendant argues that the court improperly relied on his testimony that he was in arrears during 2003 and 2004 in finding

that the plaintiff was entitled to the tax exemption for those years. We disagree.

The following additional facts are necessary for our resolution of the defendant's claim. The defendant testified at the January 3, 2006 hearing. During cross-examination, he was asked: "[D]id you owe [the plaintiff] money for 2003 and 2004?" The defendant responded: "According to the new guidelines, yes." The defendant further indicated that as of the date of the hearing, he was still making payments on that arrearage. The defendant also testified that because he had misunderstood the order, he had not disobeyed the court's orders intentionally. On the basis of this testimony, the court found that the defendant was in arrears as of December 31, 2003, and as of December 31, 2004.

The question of whether the defendant was in arrears presents a question of fact. See, e.g., *Milot* v. *Milot*, 174 Conn. 3, 4, 381 A.2d 528 (1977); *Rosato* v. *Rosato*, 77 Conn. App. 9, 13, 822 A.2d 974 (2003). "The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been

committed." (Internal quotation marks omitted.) *Chyung* v. *Chyung*, 86 Conn. App. 665, 667–68, 862 A.2d 374 (2004), cert. denied, 273 Conn. 904, 868 A.2d 744 (2005). Moreover, "[i]t is the [fact finder's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses. . . . The [fact finder] can . . . decide what—all, none, or some—of a witness' testimony to accept or reject." (Internal quotation marks omitted.) *Richards* v. *Richards*, 82 Conn. App. 372, 376, 844 A.2d 889 (2004); see also *Giulietti* v. *Giulietti*, 65 Conn. App. 813, 878, 784 A.2d 905, cert. denied, 258 Conn. 946, 947, 788 A.2d 95, 96, 97 (2001).

In the present case, the defendant testified that he was in arrears at the end of 2003 and 2004. The court, as the trier of fact, properly exercised its discretion to believe that testimony. Given our limited standard of review, we cannot conclude that this finding was clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.