COREY BROOKS *v.* COMMISSIONER OF
CORRECTION
(AC 27944)

Bishop, Gruendel and Cretella, Js.

150

Argued September 11, 2007—officially released January 1, 2008

*Jo Anne Sulik*, senior assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *Tiffany M. Lockshier*, assistant state's attorney, for the appellant (respondent).

*Annacarina Del Mastro*, senior assistant public defender, for the appellee (petitioner).

*Opinion*

GRUENDEL, J. The respondent, the commissioner of correction, appeals from the judgment of the habeas court granting relief to the petitioner, Corey Brooks, on count two of his habeas petition and ordering the petitioner resentenced to a lesser term of years on his violation of probation and other charges. The respondent claims that (1) the court's finding that the state violated its plea agreement with the petitioner is not supported by the evidence, (2) the court acted improperly when it ordered specific performance of the original plea agreement and (3) the court lacked jurisdiction to impose a criminal sentence. We affirm in part and reverse in part the judgment of the habeas court.

The following facts and procedural history are relevant to the respondent's appeal. On January 20, 2000, while on probation, the petitioner was arrested for possession of narcotics within 1500 feet of a school or

housing project. While that charge was pending, the petitioner again was arrested for possession of narcotics and also for possession of a stolen credit card. On June 29, 2000, the petitioner appeared before the trial court regarding his charges. On that day, he pleaded guilty to the charge of violation of probation. He returned to court on September 7, 2000, and was sentenced for violation of probation to a term of six years incarceration. On October 12, 2000, the petitioner again appeared before the court to resolve the charges of possession of narcotics and possession of a stolen credit card. He pleaded guilty to one count of possession of narcotics in exchange for a four year sentence to run consecutively to the six year sentence he previously had received for the violation of probation charge. The remaining charges were nolled. He did not file a direct appeal from either judgment.

On March 1, 2004, the petitioner filed a petition for a writ of habeas corpus, alleging that the prosecutor's office had "reneged" on a plea agreement it had entered into with him for a total sentence of eight years and that his counsel had failed to represent him adequately. The relief he sought was to have his sentence reduced from ten years to eight years or, in the alternative, to be allowed to withdraw his guilty pleas. The petitioner then filed an amended petition, restating the facts pertinent to his claim of ineffective assistance of trial counsel and added a second count alleging that the state breached the plea agreement it had entered into with him. On June 29, 2006, the habeas trial was heard. At the close of testimony, the petitioner withdrew his ineffective assistance of counsel claim, leaving only the claim of the state's breach of agreement for the court to decide. The court found in favor of the petitioner that there had been a global settlement agreement between the petitioner and the state for an eight year sentence on all of the charges pending against him when

he agreed to plead guilty to the violation of probation. The court ordered specific performance of the plea agreement and, as such, further ordered that the six year sentence on the mittimus dated September 7, 2000, pertaining to the violation of probation charge, be changed to four years so that the eight year sentence contemplated by the global agreement could be effectuated. This appeal followed. Additional facts will be set forth as necessary.

## I

The respondent first argues that there was evidence that would tend to show that (1) the state did not enter into a plea agreement with the petitioner, and, therefore, the state could not have breached any such agreement and (2) if there was such an agreement, it was implicitly rejected by the trial court, and, therefore, the habeas court should not have ordered specific performance. The respondent's argument, however, is premised on an inaccurate standard of review.

"It is axiomatic that it is not the function of this court to find facts." *Jewish Home for the Elderly of Fairfield County, Inc.* v. *Cantore*, 96 Conn. App. 326, 335, 901 A.2d 49 (2006). As such, we will not engage in a rebalancing of the evidence to determine whether the evidence would have supported a different outcome. "The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) *Hill* v. *Commissioner of Correction*, 103 Conn. App. 641, 646, 932 A.2d 413, cert. denied, 284 Conn. 925, 933 A.2d 726 (2007). "[T]his court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous . . . ." (Internal quotation marks omitted.) Id., 645–46. On the basis of our review in the present case, we conclude that there was sufficient evidence provided to the court in the form of transcripts

and testimony from which the court found that, in fact, there was an agreement between the state and the petitioner and that the petitioner was entitled to receive the benefit of that agreement. We cannot, therefore, conclude that the court's findings of fact were clearly erroneous.

The following additional facts are relevant to this issue. During the habeas proceeding, the court was presented with several transcripts of the petitioner's previous dealings with the trial court, as well as the petitioner's testimony. Neither the state's attorney nor the petitioner's previous defense attorney testified. The court was presented with a transcript from June 29, 2000, in which the state's attorney represented to the trial court that all of the petitioner's pending files would be resolved within an eight year settlement. He stated: "What is contemplated here with the new arrest that he has is that he is going to get every bit of the eight years when we sentence him. Counsel provided me with some information that he wants me to confirm. I indicated that I would do that. [*An attorney in the state's attorney's*] *office indicated to* [*the petitioner's counsel*] *that he would sentence his client to eight years. So, we are going to continue it for* [*the petitioner*] *to get his eight years. And on the continuance, if you could canvass him today, he will plead guilty to the pending files, get eight years on everything, and he'll be sentenced.*" (Emphasis added.)

The court proceeded to canvass the petitioner on the charge of violation of probation, and he entered a guilty plea on the basis of the understanding that he would receive a sentence of eight years on all of his pending files. The petitioner did not enter pleas on the other charges because the state's attorney indicated to the court that he had to confirm some information first. The respondent argues that the plea agreement was contingent on the information's being confirmed, and,

as such, there could not have been an agreement until such time as it was confirmed. The petitioner explained through his testimony, however, that he had a deal with the state for an eight year sentence on all of his then pending files. He further explained that the agreement contemplated a reduction in the eight year sentence if some information that he had given to the federal Drug Enforcement Administration (DEA) was confirmed. The state's attorney did not testify at the habeas proceeding. The court, therefore, was free to accept or reject the petitioner's uncontested testimony that he had a firm deal for an eight year sentence and that it could have been reduced had the information he provided been helpful to the DEA.

The petitioner returned to the trial court on September 7, 2000, with the expectation that the plea agreement that had been represented to the court on June 29, 2000, would be effectuated, namely, that he would plead guilty to the remaining files and receive an eight year sentence for all charged offenses. The September 7, 2000 transcript tells a different story. After the state's attorney described the events that led to the petitioner's arrest on the pending files, he requested that the petitioner receive a sentence of eight years on the violation of probation charge. Regarding the other pending files, the state's attorney requested a new date and suggested going to trial on them because they could not be resolved. The petitioner's attorney requested that the petitioner receive a four year sentence for violation of probation and requested another pretrial on the pending files, suggesting that "tempers" might have been the problem with the resolution of the other files.

The petitioner explained through his testimony that, prior to the proceedings on September 7, 2000, he was meeting with his attorney about securing a better offer than the eight year offer. At that point, the state's attorney walked in on the conversation and then left the

room. The petitioner's attorney spoke with the state's attorney and reported back to the petitioner that the state's attorney would no longer honor the agreement for the eight year sentence on all pending files because the state's attorney "felt like [the petitioner] insulted his intelligence by saying that [he] couldn't take the eight . . . ." The petitioner asked his attorney what his options were and asked if he could take his plea back. The petitioner explained that his attorney instructed him that it was too late to take his plea back because he had already been canvassed on it. When the parties appeared before the court, the state's attorney argued that the petitioner should receive eight years on the violation of probation charge and the petitioner's attorney argued that the petitioner should receive four years on the charge. The court ultimately sentenced the petitioner to six years on the violation of probation charge but continued the case with the understanding that the petitioner would plead guilty to and be sentenced on the remaining files.

The respondent argues that "[o]bviously, the state withdrew from the 'agreement' when the petitioner failed to enter a guilty plea by September 7, 2000, and moved for a speedy trial." The court was free, however, to accept the petitioner's uncontested testimony that he failed to enter guilty pleas on the remaining charges and moved for a speedy trial because the state refused to honor the plea agreement after overhearing a conversation between the petitioner and his defense attorney.

The petitioner's case was continued to September 26, 2000, for the petitioner to enter his pleas to the remaining files. On that day, however, the court refused to accept the petitioner's pleas because it was "convinced that [the petitioner] [did not] know what [he was] doing." The petitioner explained that the court refused to accept his pleas because he was upset. He

further explained that he was upset because his attorney "wasn't going after [the state's attorney] because he didn't give [him] that original eight year deal."

The case eventually was continued to October 12, 2000. By that point, the petitioner had begun serving his sentence for violation of probation, the state continued to refuse to honor the plea agreement, and the petitioner was confronted with either taking a four year plea agreement on one of the narcotics charges or risking going to trial on all of his remaining charges. The petitioner testified that although he continued to insist on the eight year sentence and instructed his attorney to attempt to effectuate it, his attorney had indicated to him that it was "too late" to withdraw his plea or to enforce the agreement. The petitioner explained that he trusted the representation of his attorney and "didn't really . . . push the issue" because he "felt that [it] was a done matter." On advice of counsel, therefore, and facing a trial on the pending charges, the petitioner pleaded guilty to one of the narcotics charges and accepted a four year sentence, which was consecutive to the six years to which he had already been sentenced. The remaining charges were nolled.

The respondent argues that the petitioner's request for and acceptance of a four year sentence on the narcotics charge on October 12, 2000, was "simply a situation in which two parties 'renegotiated' the terms of their 'contract' when the petitioner failed to meet his obligations." The record reveals, however, that by October 12, 2000, the global agreement for an eight year sentence on all pending files would not be honored. Facing a trial on his remaining charges, the petitioner accepted an offer under which he would plead guilty to one of his narcotics charges and receive a four year sentence to run consecutively to the six year sentence he had already received. The petitioner, therefore, did not simply renegotiate the original plea agreement.

Rather, as the court found, he entered into a new agreement with the state to resolve his remaining charges.

Finally, the respondent's contention that the court implicitly rejected the plea agreement because it ultimately sentenced the petitioner to a term of years greater than eight, is unpersuasive. The respondent argues that when a trial court imposes a sentence greater than that agreed to in the plea agreement, the trial court implicitly rejects that plea agreement. See *Miller* v. *Commissioner of Correction,* 29 Conn. App. 773, 780, 617 A.2d 933 (1992). In *Miller,* after the state's attorney advised the court of the plea agreement it had reached with the defendant, the court canvassed the defendant and advised the defendant that he would have a right to withdraw his plea if the court imposed a sentence greater than that to which the parties had agreed. Id., 774. When the defendant returned to court, the court did in fact sentence him to a term greater than that stated in the plea agreement but did not advise the defendant that he could withdraw his plea. Id., 774–75. This court held that the defendant in *Miller* should have had the right to withdraw his plea, in accordance with Practice Book § 39-10, because the court effectively had rejected his plea by sentencing him to a term of years greater than that agreed on in the plea agreement.[1] *Miller* v. *Commissioner of Correction,* supra, 780–81.

In contrast, the record in the present case reflects that on June 29, 2000, after the state's attorney presented the

[1] Practice Book § 39-10 provides: "If the judicial authority rejects the plea agreement, it shall inform the parties of this fact; advise the defendant personally in open court or, on a showing of good cause, in camera that the judicial authority is not bound by the plea agreement; afford the defendant the opportunity then to withdraw the plea, if given; and advise the defendant that if he or she persists in a guilty plea or plea of nolo contendere, the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement."

plea agreement to the court, the court canvassed the petitioner and accepted his plea to the charge of violation of probation. The petitioner returned to the court on September 7, 2000, for sentencing and received a sentence of six years on the violation of probation charge, a term of years less than the agreed on sentence. As the habeas court pointed out, this sentence was not a "clear abrogation" of the plea agreement. Further, by the time the petitioner returned to court on October 12, 2000, his circumstances had changed drastically. By this point, the petitioner had begun serving his sentence for violation of probation, the state's attorney had refused to honor the plea agreement and the petitioner was confronted with either taking an additional sentence of four years or going to trial on his remaining charges. The record reflects, therefore, that the court's sentencing of the petitioner to four years on October 12, 2000, which made the petitioner's total sentence ten years, was not an implicit rejection of the June 29, 2000 plea agreement but, rather, it was the court's acceptance of a separate and distinct plea agreement struck between the state and the petitioner after the state had refused to honor the original plea agreement.[2] The habeas court concluded that "[the petitioner] voluntarily gave up the constitutional right to contest the violation of probation in exchange for a total eight year sentence. He did not get the benefit of that; he is entitled to that." On the basis of all the evidence presented to the court, we cannot conclude that the court's findings were clearly erroneous.

---

[2] The respondent argues that the separate plea agreement entered into between the petitioner and the state's attorney on October 12, 2000, is also evidence that there was never a firm agreement on June 29, 2000, for an eight year sentence on all pending files. This argument fails to consider that there was sufficient evidence before the court to find that the state's attorney had entered into such an agreement on June 29, 2000, and had breached that agreement prior to October 12, 2000, making it necessary for the petitioner to secure a new agreement.

## II

The respondent's second claim is that the court improperly granted specific performance of the plea agreement. The respondent argues that it is the unique function of the trial court, not the habeas court, to weigh the equities and to decide whether the petitioner should be afforded the opportunity to withdraw his plea or to receive specific performance of the plea agreement. We conclude that under the facts and circumstances of this case, it was proper for the habeas court to order specific performance of the plea agreement.

"[T]he writ of habeas corpus holds an honored position in our jurisprudence . . . [as] a bulwark against convictions that violate fundamental fairness." (Internal quotation marks omitted.) *Gaines* v. *Manson*, 194 Conn. 510, 516, 481 A.2d 1084 (1984). Pursuant to General Statutes § 52-470 (a), the court hearing any habeas petition "shall . . . dispose of the case as law and justice require." In accordance with § 52-470, "the [habeas] trial court, *much like a court of equity*, has considerable discretion to frame a remedy, so long as that remedy is commensurate with the scope of the constitutional violations which have been established." (Emphasis added.) *Gaines* v. *Manson*, supra, 528. In the present case, the petitioner gave up his constitutional right to be tried before a jury and to have the state prove every element of the offense when he entered a guilty plea in reliance on a plea agreement. The question remains as to what type of remedy is appropriate when a finding of guilt is made on the basis of a plea agreement, which ultimately is not honored.

We have held that "[w]hen a guilty plea is induced by promises arising out of a plea bargaining arrangement, fairness requires that such promises be fulfilled by the state. . . . The same concept of fairness ordinarily

impels the court, in its discretion, either to accord specific performance of the agreement or to permit the opportunity to withdraw the guilty plea." (Internal quotation marks omitted.) *Miller* v. *Commissioner of Correction*, supra, 29 Conn. App. 778. "One alternative may do justice in one case, and the other in a different case. In choosing a remedy, however, a court ought to accord a defendant's preference considerable, if not controlling, weight inasmuch as the fundamental rights flouted by [the state's] breach of a plea bargain are those of the defendant, not of the [s]tate." (Internal quotation marks omitted.) *State* v. *Rivers*, 283 Conn. 713, 732–33, 931 A.2d 185 (2007); see also *United States* v. *Kummer*, 89 F.3d 1536, 1543 (11th Cir. 1996) ("[t]his court has said that when the government . . . does not follow a plea agreement the court should order specific performance or afford the defendant an opportunity to withdraw the plea; and specific performance is preferred"), cited with approval in *State* v. *Rivers*, supra, 733.

"[T]he primary purpose of a decree of specific performance, which is always an equitable remedy, is to place an injured [party] in a position that replicates, as nearly as possible, that which [he or she] would have enjoyed but for the [other party's] unexcused breach." (Internal quotation marks omitted.) Id. In the present case, the petitioner requested that his plea agreement be specifically performed, and the habeas court granted the relief requested. The question presented is whether the habeas court acted properly in granting such relief. Although "[g]enerally, the determination of what equity requires in a particular case is within the discretion of the trial court;" id., 734; our Supreme Court has found that under appropriate circumstances, the provision of the habeas corpus statute that provides that the court shall dispose of the case, "as law and justice require," allows the habeas court to grant specific performance

of a petitioner's plea agreement. See *Medley* v. *Commissioner of Correction*, 235 Conn. 413, 417 n.5, 667 A.2d 549 (1995); General Statutes § 52-470.

In the present case, the respondent failed to provide the habeas court with any evidence of equitable considerations. Because there were no equitable considerations presented, there was no reason for the habeas court to remand the case to the trial court, except for resentencing in accord with the agreement, after it found that there was in fact an agreement entered into between the petitioner and the respondent and that the petitioner was entitled to the benefit of that agreement. In so concluding, we also follow our Supreme Court's most recent pronouncement in this area, that "[b]ecause the state has failed to raise any factual issues that would affect the equitable determination in the present case . . . we reject the state's contention that a determination of the propriety of granting specific performance requires a factual weighing of the equities by the trial court." *State* v. *Rivers*, supra, 283 Conn. 734. We conclude, therefore, that the habeas court acted properly in granting a judgment of specific performance when it found that a plea agreement had been entered into and that the petitioner had not received the benefit of the agreement, where the respondent failed to provide evidence of any factual issues that would affect an equitable determination of the propriety of granting specific performance.

## III

The respondent finally claims that the court lacked jurisdiction to resentence the petitioner. The court stated in its decision that "the relief the court is going to order is on the mittimus dated September 7, 2000 . . . in order to effect the agreement between the petitioner and the state, the sentence on that violation of probation should have been four years, with the four

year consecutive sentence that was adjudged on [October] 12 . . . . Consequently, the relief . . . is ordered effective." We conclude that although the habeas court had the authority to order the relief, it lacked the ability to effectuate the relief. It was necessary for the habeas court to issue a writ of habeas corpus directing the trial court to vacate the original sentences and to resentence the petitioner in accordance with the original plea agreement. See *Orcutt* v. *Commissioner of Correction*, 284 Conn. 724, 743–44, 937 A.2d 656 (2007) (concluding that habeas court should have directed trial court to resentence petitioner in accordance with the habeas court's determination that petitioner should have been sentenced in accordance with plea agreement); *Medley* v. *Commissioner of Correction*, supra, 235 Conn. 417 (case remanded to habeas court with direction to render judgment granting that part of petition seeking specific performance of plea agreement and to order trial court to resentence petitioner accordingly).

The judgment is affirmed in part and reversed in part and the case is remanded to the habeas court with direction to issue a writ of habeas corpus directing the trial court to vacate the original sentences and to resentence the petitioner in accordance with the original plea agreement.

In this opinion the other judges concurred.